Brockenbrough, J.
By the 5th article, section 1st, of our present constitution, the judicial power is vested (besides other courts, judges and justices) “in such superiour courts as the legislature may from time to time ordain and establish and the jurisdiction of the judicial tribunals, and of the judges thereof, is to be regulated by law. These provisions authorize the legislature to model the superiour courts (inferiour, however, to the supreme court) in any manner that its wisdom and experience may suggest, and to reform, alter, or even abolish them (taking care to substitute other superiour courts in their place) whenever the good of the country may require it. But lest this remodelling or abolition of those courts should be effected for the unworthy purpose of removing obnoxious judges, and that it might *112 not impair the independence of the judiciary, a restriction was imposed on the legislature. The second section ordains that “ no law abolishing any court shall be construed to deprive a judge thereof of his office, unless two thirds of the members of each house present concur in the passing thereof.” The independence of the judiciary is also secured by the provision, that judges shall hold their offices during good behaviour. They cannot be removed, unless by impeachment and a regular trial, on charges that they have offended against the state, either by maladministration, corruption, neglect of duty, or other high crime or misdemeanour; or by a concurrent vote of both houses of the general assembly, in which two thirds of the members present must concur; the cause of removal, in the last mentioned case, being entered on the journals of each house, and the proceeding for removal being only carried on after due notice given to the judge to be proceeded against. And their independence is yet further secured by the clause which declares that they shall have fixed and adequate salaries, which shall not be diminished during their continuance in office.
At the first session of assembly after the adoption of the new constitution, the legislature proceeded to ordain and establish the superiour courts, which they invested with a certain portion of the judicial power. These consisted of the general court, and the circuit superiour courts of law and chancery. The identical judges who composed the general court, formed also the circuit superiour courts : that is to say, each judge of the general court was assigned to some one circuit composed of several counties or towns, and there were exactly as many judges of the general court, as there were circuits. So intimately were these courts blended together, that the law directed the judges of the general court to be commissioned by the executive, as judges of the general court, and of the circuit superiour courts of law *113 and chancery to and for which they should be elected and assigned. And the general law establishing their salaries gives those salaries to them as judges of the . , r , . general court and or the circuit superiour courts.
The question in the present case arises from the language of the 27th section of the circuit superiour court law. That section first directs that all the special powers and jurisdiction formerly exercised by the superiour court of law for Henrico, and the district chancery court of Richmond, shall be exercised by the circuit superiour court of Henrico. Jt then directs, that for the trial of criminal causes the judge of the said circuit superiour court of Henrico shall hold three terms &c. and then adds, “ and the judge of the said court shall receive the additional salary prescribed by the act passed January 29th 1823.” It is contended by the counsel for the commonwealth, that this additional salary was given to the incumbent as judge of the circuit superiour court of Henrico, and not as judge of the general court, or as judge of the seventh circuit; and that as soon as the incumbent ceased to be judge of the circuit superiour court of Henrico, he ceased to be entitled to the additional salary. But this, in my opinion, is an entire misconception. The incumbent did not receive the additional salary, nor was it given to him, as judge of the circuit superiour court of Henrico; he did not hold such an office, as a separate office; he was not so commissioned ; but he was commissioned as a judge of the general court, and of the circuit superiour courts of law and chancery for the seventh circuit, to which he was elected and assigned. He could not have received the salary as judge of the circuit superiour court of Henrico, unless the law had established that as a separate court, and he had been elected to that special court, and commissioned as judge of it. This view is entirely confirmed by the act of January 1823, the language of which is, “ that the judge of the general court *114 assigned to the fourth judicial circuit (now the seventh) shall receive, in addition to his present salary, the annual sum of 300 dollars this enactment was made, after the previous part of the law had shewn, that the increase of business in the circuit court of Henrico was the motive for making the addition. So this 27th section shews, that the motive for giving the additional salary was the special jurisdiction conferred on the circuit superiour court of Henrico, consisting of appeals from the auditor, of chancery suits brought by or against the commonwealth, of identification of convicts twice sent to the penitentiary from all parts of the state &c. and the increase of the criminal business of that court. But although such was the motive for making the addition, yet it was given to, and received by, the incumbent, in the only character in which he could receive it, that of the office which he held.
Having ascertained the character in which judge Clopton received this additional salary, the next question is, could the legislature, who had given him the fixed salary of 1800 dollars, diminish it during his continuance in his office ? Certainly not, without violating the letter and spirit of the constitution. The legislature may remodel, alter or reform these courts, or any of them. Suppose then they had by law taken away from the circuit superiour court of Henrico, the special jurisdiction above mentioned, and conferred it on some other court (say the general court); or suppose that the criminal business having diminished, they had again reduced the criminal terms to two instead of three; will any one say, that, as these were the original motives for making an addition to the salary, it might now be cut down to the original salary? No—because the salary cannot be diminished during his continuance in the office, that is, in the office of judge of the general court and of the circuit superiour courts of law and chancery.
*115 The same course of reasoning will apply to the case ° 1 r J_ which has actually happened, namely, the disconnexion of one of the courts from the circuit to which it has heretofore been attached, and making a new circuit of it. Perhaps I can make this more palpable by taking another circuit. It is said that in the 13th circuit, consisting of Frederick, Berkeley, Jefferson, Morgan and Hampshire, there is a vast press of business. If from that circuit the county of Frederick should be struck off, and a new circuit formed of it and one or more of the counties of the adjacent 14th circuit, and a new judge of the general court elected and assigned to the new circuit, would any one believe, that because the legislature had relieved the judge of the 13th circuit of a great part of his labour, his salary could be reduced from 1500 dollars to 1200 dollars ? And yet judge Clapton's case is precisely similar. After the additional salary was given, the judge of the general court assigned to the 7th circuit had a legal right to the salary of 1800 dollars. The legislature could not reduce it to 1500 dollars by striking off the county of Henrico. If it could, then that which the constitution says shall be fixed, might easily be unfixed at the pleasure of the legislature ; and the judges, instead of that feeling of independence which results from the consciousness of a certain support that cannot be taken from them, would be liable to the continual apprehension of a state of dependance.
I am happy to say, that, in this case, no such attempt has been made by the legislature, nor have I any reason to believe it ever will be made. In the act of 25th February 1837, establishing the new twenty-first judicial circuit, composed of the county of Henrico and city of Richmond, there is not one word which takes away from the judge assigned to the seventh circuit, any part of his salary, nor is there any intimation that such was the intention of the legislature.
*116 I am for affirming the judgment, which reversed the decision of the auditor.
Parker and Cabell, J. concurred.
Tucker, P.
By the act of 1323, the judge of the general court assigned to the fourth judicial circuit was entitled to an additional salary of 300 dollars. By the act of 1831 (the new organization) the county of Henrico was made part of the fourth district and seventh circuit; and it was declared that the judge of the circuit superiour court of Henrico should receive the 300 dollars additional salary prescribed by the act of 1823. Thus far there can be no doubt. Judge Brockenbrough, the predecessor of judge Clopton, was entitled to receive and did receive the 300 dollars additional salary. Upon his promotion, judge Clopton was appointed and commissioned judge of the general court and of the circuit superiour courts within the seventh circuit in the fourth district: and as Henrico county was within that circuit, his commission extended to that, and he was, to every intent, judge of that circuit superiour court, and entitled to the 300 dollars additional to the general salary of the judges of the general court. On the faith of these rights, he accepted the office; and in 1837, the legislature severed Henrico from the seventh circuit. This act, however, did not, in terms, take away the 300 dollars additional, nor did it intimate that it should be paid to the new incumbent, judge Nicholas. On the contrary, it gives him 2000 dollars, without abolishing the additional 300 dollars to judge Clopton. If, therefore, the legislature had had full power to take from him that part of his salary, it has not done so.
But, in truth, it could not constitutionally do so. Judge Clopton accepted a commission which made him judge of the whole seventh circuit, and entitled him to all the emoluments of the judge of that circuit; that is, *117 to the general salary of 1500 dollars, and the additional salary of 300 dollars given to the judge of the superiour court of Henrico. Now, by the 5th section of the 5th article of the constitution, the legislature had no power to diminish judge Clapton's salary during his continuance in office, and by the 2nd section it had no power to deprive him of his salary by abolishing the court; and a fortiori it had no right to remove him from office by a legislative act. In any aspect of the case, therefore, it would have been unconstitutional to take away his 300 dollars. If he had continued in the discharge of the duties of judge of the superiour court of Henrico, it would be admitted on all hands, that the taking away of the 300 dollars would have been unconstitutional under the 5th section. It is true, however, that he no longer discharges those duties : they have been assigned to another. This the legislature had a right to do, but it had no right to take away his salary. For the act of 1837 has either abolished the court, or it has not. Suppose the court to be abolished by the erection of it into the twenty-first circuit: then, as judge Clopton held the office of judge of that court, and was entitled as such to 300 dollars, the abolition of the court could not, under the 2nd section, take away his office or his salary. Is the case any better, if we consider the court as not abolished ? If it be not, then judge Clopton is removed from that office by a mere legislative act, whereas he could only be constitutionally removed by a vote of two thirds of both houses. In every aspect of the case, therefore, it would have been unconstitutional in the legislature to take away from him his additional salary.
But in fact it has not done so. There is no provision repealing the salary of 300 dollars. Nor is the salary given to judge Nicholas; for he has an independent salary of 2000 dollars, having neither connexion with nor reference to this 300 dollars. It still remains on the statute book, a salary to be given to somebody. Shall *118 it go to judge Nicholas ? Surely not. His salary was raised to 2000 dollars, without an idea of his having this 300 dollars also. To whom then does it go ? To judge Clopton, from whom it could not constitutionally be taken away.
Judgment affirmed.