# Charlestown.

## ABRAHAMS v. SWANN.

Decided August 20, 1881.

*(Absent, PATTON, JUDGE.)

1. When a case is tried by a court in lieu of a jury, it is not an error, for which the appellate court will reverse, to hear illegal testimony, if there be enough legal testimony to justify the judgment.

*Case submitted before Judge P. took his seat.

2. In such a case the party excepting must be regarded as a demurrant to the evidence, and the judgment of the court below will not be reversed, unless it is plainly erroneous.

3. The court ought not to compel the production of a document by the plaintiff, which is a part only of his evidence and is not material evidence for the defence.

4. To remove the bar of the statute of limitations by a new promise in writing, such promise must be determinate and unequivocal; and if the new promise is to be raised by implication of law from an acknowledgment, there must be an unqualified acknowledgment of a subsisting debt, which the party is liable and willing to pay.

5. If such acknowledgment or promise is contained in a letter of the defendant to the plaintiff, it is not necessary, that the amount of the debt or that its date should be specified in the letter, but the particular debt, to which the letter refers, may be identified by extrinsic evidence written or parol; and if so identified clearly, and the promise is unequivocal, or the acknowledgment is of a subsisting debt, for which the defendant is liable and willing to pay, the bar of the statute of limitations is thereby removed.

Writ of error and *supersedeas* to a judgment of the circuit court of the county of Kanawha, rendered on the 22d day of December, 1877, in an action of assumpsit in said court then pending, wherein Jesse A. Abrahams was plaintiff and John S. Swann was defendant, allowed upon the petition of said Swann.

Hon. Joseph Smith, judge of the seventh judicial circuit rendered the judgment complained of.

GREEN, JUDGE, furnishes the following statement of the case:

On June 2, 1852, the plaintiff, Jesse Abrahams, became the surety with Thomas L. Hobson of the defendant, John S. Swann, as curator of Meliora G. Swann. A chancery suit was instituted against John S. Swann, such curator, and his said sureties in his official bond; and on April 25, 1860, the circuit court of Powhatan county, Virginia, where the parties then resided, in a suit brought to require the settlement of his, John S. Swann's, accounts as such curator, the court decreed, that he and his sureties do pay to the receiver of the court the balance found due from said Swann as such curator, to wit, $825.76 with interest thereon from April 25, 1860, till paid.

On this decree execution was issued, and the payment of one half of said amount was enforced out of Jesse A. Abrahams. This half so paid by him to the sheriff amounted when paid to $456.31 ; or rather this moiety of the debt was satisfied by the payment of $400.00 on December 13, 1860, and $56.31 on March 4, 1861, on an award of execution on a forfeited forthcoming bond. In January, 1862, John S. Swann repaid the plaintiff on this debt $46.60, and has never made any other payment on it. There were no other business transactions between the plaintiff and defendant, except that John S. Swann held the plaintiff's note for $11.00, and owed the plaintiff $18.75 for professional services as a lawyer. The plaintiff at one time proposed by letter, that he would surrender his claim for professional services, if Swann would send him this $11.00 note ; but the defendant never replied to this note. Between January, 1866, and January, 1875, the plaintiff wrote to the defendant numerous letters, to which he replied. Eight of these letters of defendant to plaintiff in reply were produced, but only six of them were copied in the record. The contents of these letters will be sufficiently stated in the opinion. They were all written prior to 1870 except two. In one of them, dated September 9, 1871, the plaintiff says referring, as on careful examination I have concluded the other evidence shows, to this surety debt: "I have acknowledged the debt to you in my letters again and again. Therefore it stands as good as if you had my bond."

In Oct. 1875 the plaintiff Jesse A. Abrahams brought his action of assumpsit in the circuit court of Kanawha county against John S. Swann, to recover this money paid for him as his security. The defendant pleaded *non assumpsit*, on which issue was joined, and afterwards the statute of limitations, to which the plaintiff replied, that on the 9th day of Sept., 1871, the defendant by a promise in writing signed by him promised the plaintiff to pay him the moneys claimed, and the action was brought in five years thereafter, issue was joined on this replication. The parties waived a jury, and the case was submitted to the court in lieu of a jury for its decision. The facts above stated were proven by evidence, which according to the principles stated in the opinion was legal evidence. The court on Dec. 22, 1877, rendered a judgment for

the plaintiff for $921.67 with interest thereon from Dec. 22, 1877, and costs.

The letter of Sept. 9, 1871, and another written by the defendant to the plaintiff were in the hands of the plaintiff's counsel; and after the plea of *non assumpsit* was filed, but before the plea of the statute of limitations was filed, the defendant moved the court to compel the production of these two last letters sustaining his motion by an affidavit, that they were material and proper to be produced before the court. This motion was resisted by the plaintiff's counsel, who swore, that these letters were not material to the defence of the suit. The court refused to require their production; and the defendant excepted. These letters were afterwards produced and read at the trial of the case. The plaintiff's depositions were excepted to, as the exception on its face says, because there were no affidavits of the non-residence of the affiants, and because they were taken a second time without leave of the court. But the record does not show the existence of the facts, on which these exceptions appear to be based. They were also excepted to, because after they had been endorsed "filed," they were withdrawn without leave of the court and taken again. The record does not show this exception to be based on fact, nothing of the sort appearing. These depositions were also excepted to, because they attempt to identify the debt acknowledged in writing by the defendant by extrinsic and parol evidence. The reading of the six letters, written more than five years before the suit was brought, was objected to by the defendant. These letters were however allowed to be read. They were intended to identify the debt acknowledged by the letter of Sept. 9, 1871, written less than five years before the suit was brought. All of them were permitted to be read by the court. The plaintiff also objected to the reading of the record of the chancery cases, whereby the plaintiff as surety of the defendant was decreed to pay the money, which he did pay, and also to the receipts of the sheriff showing such payment.

A writ of error and *supersedeas* was granted to the judgment of the circuit court of Kanawha by the judge of the eighth judicial circuit on the petition of the defendant.

*W. A. Quarrier* for appellant cited the following authori-

ties: 17 Wend. 389; Code 585, 616 § 8; 1 Pet. 351; 6 Pet. 86; 8 Cranch 122; 8 Gratt. 110; 13 Gratt. 329; 8 Leigh 45; L. R. 10 Q. B. 500; S. C. 1 L. and Eq. Rep. 234.

*Miller & Gallaher and Smith & Knight* cited the following authorities for appelle: Code ch. 130 § 43; Acts 1872–3 ch. 81; 12 Gratt. 615; 13 Gratt. 427; 17 Gratt. 445; 21 Gratt. 158; 11 W. Va. 535; Bart. L. Pr. 82; 8 Gratt. 117; Code ch. 104 § 8; Greenl. Ev. § 441; 4 Pick. 110; 1 Rob. Pr. 534, 535, 540, 548; 8 Gratt. 133.

Green, Judge, announced the opinion of the Court.

The first error assigned by the plaintiff in error is, that the circuit court would not compel the production by the plaintiff of two letters written by the defendant and relied on by the plaintiff as acknowledgements in writing sufficient to take his case out of the statute of limitations. The motion of the defendant to require the production by the plaintiff of these letters was made before the defendant had put in the plea of the statute of limitations, and was obviously made to obtain a view of these letters, that he might determine, whether he would plead the statute of limitations. These letters were entirely immaterial to the trial of the only issue then in the case, that is, the issue on the plea of *non assumpsit*; nor does the affidavit allege, that they were material to the trial of this issue. Clearly the court did right in refusing to require the plaintiff to produce this evidence. Even had they been material evidence for the plaintiff in the issue then joined, the court could not properly have for this reason required their production. To justify such requirement, they must have been material evidence for the defendant; for the rule is, that the defendant has a right to enforce the production of such documents by the plaintiff, as relate to his defence, and does not extend to the enforcement of the production of documents by means of which the plaintiff's case is to be established. See Wigram on the Law of Discovery p. 90, 13 vol. of law library. The case of *Raymond* v. *Howland* 17 Wend. 389 referred to as an authority on this point by the plaintiff in error in his petition has no bearing on the question. It simply decides, that when the letters of the correspondent of the defendant are relied upon at the trial as evidence in support of

the action, the defendant is entitled to read his answers to such letters, so that the jury may pass upon the whole of the correspondence.   In this case the defendant did not at the trial produce or offer to produce the plaintiff's letters, to which these letters of the defendant were replies, and if the whole correspondence was not before the court at the trial, it was only because the defendant suppressed these letters.   The two letters of the defendant, which he wished to compel the plaintiff to produce, before the issues were joined, were actually produced and read at the trial.   The first assignment of error was not well taken.

The second assignment of error is the allowing of the deposition of plaintiff's witnesses to be read at the trial, because, as the petition alleges, these depositions had been before taken in this cause and filed with the six letters referred to in them, and these depositions and letters had been taken from the custody of the clerk without the leave of the court and without leaving copies or other means of identifying them, and there is no proof identifying the letters filed with the last depositions with those filed with the first.   There is however in the record no proof of the alleged facts, on which this assignment of error is based.   There is no proof, that after the filing of these letters they were withdrawn from the clerk's office with or without the leave of the court and no copies of them left.   The record is entirely silent on this point.   Thus there is no foundation for this assignment of error.

The third assignment of error is the admitting of letters written by the defendant more than five years before the commencement of this suit.   These letters were referred to in the defendants letter written September 9, 1871 acknowledging the debt within five years before the commencement of this suit; and they were used to identify the debt referred to in this letter.   We will presently see, that parol evidence even was admissible to identify the debt referred to in a letter containing an acknowledgment of the debt, and therefore the court did not err in admitting these letters or such of them as tended to show, what debt was intended to be acknowledged by the letter dated the 9th day of September, 1871.   If any of them had no tendency to show this, as may be the case with the two letters not copied in the record, still it would have

been no error in the court to have refused to exclude them; for as said by this court in *Nutter* v. *Sydenstricker*, 11 W. Va. 543, 544: "The evidence being certified, it is for the appellate court to say, whether there is sufficient legal testimony in the case to sustain the judgment of the court below. If there was, it would not avail the defendent in error, even if improper testimony had been admitted in the court below; for when the court tries a case in lieu of a jury, it is certainly competent to disregard illegal testimony."

The fourth assignment of error is that the court erred in admitting parol evidence and the record of the Powhatan circuit court to make certain, what was not made certain by the defendant's letter relied on to take the case out of the statute and to identify the debt referred to in this letter. This is the main objection urged to the action of the court below; and if it cannot be sustained, there is no error in the record, of which the plaintiff in error can complain. The position taken by the counsel of the plaintiff in error is, that if the bar of the statute is sought to be removed by proof of a new promise in writing, such promise must be clear, explicit, unequivocal and determinate, and if any conditions are annexed, they must be proven to have been performed; and if an acknowledgment is relied upon to take a case out of the statute of limitations, it should be a direct acknowledgment of a subsisting debt from which an implied promise may be fairly inferred. These positions are sustained by the authorities referred to by the counsel of the plaintiff in error: *Bell* v. *Morrison et al.*, 1 Pet. 351; *Moore* v. *President &c. Bank of Columbia*, 6 Peters 86; *Bell* v. *Crawford*, 8 Gratt. 110; *Tazwell* v. *White's adm'r*, 13 Gratt. 329; *Aylette's ex'r* v. *Robinson*, 9 Leigh 45.

These authorities do not sustain the position, that extrinsic evidence parol or written can not be received to make certain the debt, which the defendant has acknowledged in writing without specifying the amount or date of the debt. On the contrary in *Bell* v. *Crawford*, 8 Gratt. 177, Judge Moncure says: "It was not necessary, that the amount of the debt should have been specified in the letter. The particular debt, to which the letter refers, may be identified by extrinsic evidence." This position of Judge Moncure is sustained by the authorities. See *Lechmere* v. *Fletcher*, 1 C. & M. 631; *Bird*

v. *Gammon*, 3 Bing. N. C. 883 (32 E, C. L. 368) ; *Waller* v. *Lacy*, 1 Mann. & G. 54 (39 E. C. L. 349); *Gardner* v. *McMahon*, 3 Adol. & El. (N. S.) 561 (43 E: C. L. 867) ; *Cheslyn* v. *Dalby*, 4 You. & Coll. 238 (9 M. & W. 633); *Barnard* v. *Bartholomew*, 22 Pick. 291. It may be added, that the date also of the debt acknowledged in writing by the defendant may be supplied by parol evidence. *Edmonds* v. *Downes*, 2 C. & M. 458.

The only question remaining to be determined is, does the evidence in this case show, first, an acknowledgment by the defendant of the debt in writing, and whether this acknowledgment is a direct acknowledgment of a subsisting debt, from which an implied promise to pay it may be fairly inferred; and secondly, is the debt, if so acknowledged, made certain by extrinsic evidence either parol or in writing? Our statute (see Code of W. Va. p. 548 ch. 104, § 8) provides, that "no promise except by writing as aforesaid shall take a case out of the operation of the statute. An acknowledgment in writing as aforesaid, from which a promise may be implied, shall be deemed to be such promise within the meaning of this section." We have seen, that no promise can be implied from any acknowledgment except a direct acknowledgment of a subsisting debt; and we may add, that such implication cannot arise, if it appears from the writing, that though the debt was directly acknowledged, yet this acknowledgment was accompanied by expressions, which showed, that the defendant did not intend to pay it and did not intend to deprive himself of the right to rely on the statute of limitations; for under such circumstances no promise of payment can be fairly implied. Thus in *Moore* v. *The Bank of Columbia*, 6 Pet. 90, a witness proved, that he casually overheard a conversation between the defendant, who was drunk, and two of his drinking companions, who were bantering him about his independent circumstances and about his being so clear of debt and of the banks. The defendant being drunk jumped up and danced about the room and exclaimed: "Yes, except one damned $500 in the Bank of Columbia, which I can pay at any time." It was decided, that this did not remove the bar of the statute, though the promise or acknowledgment was not then required to be in writing. So the bar of the statute was held not to

be removed by a letter, which said, "though I do not deny it, I do not promise to pay it; whether I will promise, and what species of payment I will make, I reserve for further consideration." *Morrell et al.* v. *Frith*, 3 M. & W. 403 (34 E. C. L. 373). So a promise cannot be inferred from a writing, when it is clear that the meaning of the defendant was not to render himself personally chargeable but to inform the plaintiff of trustees with funds to pay the debt. *Whippy* v. *Hillary*, 5 C. & P. 209; 3 B. & Ad. 399 (23 E. C. L. 103). So a writing charging a reversionary interest, when the same should come into possession, would not be regarded as such an acknowledgment, as would subject the party to a suit for a debt barred by the statute. See *Martin* v. *Knowles*, 1 Nev. & M. 421 (28 E. C. L. 327). But on the other hand a letter may amount to an acknowledgment of the plaintiff's demand and a promise to pay it, though it points out a source of payment, when it does not confine the creditor to the source indicated; as where besides expressing a hope, that money from a certain source will end the delay in payment, it in effect says, that at all events the debt must be ultimately redeemed. *Bird* v. *Gammon*, 3 Bing. (N. C.) 883 (32 E. C. L. 366).

In the case before us the letter relied upon to remove the bar of the statute of limitations was as follows:

"CHARLESTON, September 9, 1871.

MY DEAR FRIEND:—Your letter from Richmond reached me this morning. If you knew the struggle I have had since the war you would not think hard of me, or strange in me, for not paying you all I owe you. It is needless for me to give you a detail. You are not my only creditor by a good deal, and my bread and meat debts I have had to pay first. If I had any money over and above this, I would send it to you without solicitation. I have land, the taxes on which amount to full $100 a year. If I don't pay I lose the land. I have been at the bar about two years; a lawyer has to wait for his fees; mine are beginning to come in, and as fast as I get money it goes in payment of what I owe. I will never keep a $100 in my pocket as long as I owe a just debt, and never have. On my honor, you shall be paid as I get the money over and above my bread and meat. I can do no more. I have just returned

from Washington, where I went to get a patent for some ma-
chinery, &c. This will make me rich very soon. The first
money I get from any source I will send you. I have con-
tracted to sell some land in November next. If I get the
money, I will then pay you. If I succeed in my machinery,
I will do for you a great deal. I cannot doubt my success.
If I give bond and it fall into another's hands it may ruin
me, and in the end be of little benefit to you; for if my credit
is lost, I am lost. You may rely upon it, that I know better
how to get means to pay you than you can suggest. I have
acknowledged the debt to you in my letters again and again;
therefore it stands as good as if you had my bond. Trust to
my honor and good faith, and your kindness to me will yet
be your salvation. Upon this you may rely.

"Your friend,

"JOHN S. SWANN."

Though this letter points out a source of payment, yet it
obviously does not confine the creditor to the sources indi-
cated. It certainly in effect says, that in any event the debt
must be paid. I can give no other meaning to the words "I
have acknowledged the debt to you again and again, therefore
it stands as good as if you had my bond." He certainly in-
tended not only to acknowledge the debt, but also to expressly
waive his right to claim the benefit of the statute of limitations;
and from such an acknowledgment and such expressions a
promise to pay the debt may be fairly implied.

The only remaining question to be determined is: Does
the extrinsic evidence parol or in writing clearly identify the
debt, which the defendant thus acknowledged? There can, I
think, be no doubt on this point. The defendant owed but
two debts to the plaintiff, one of $456.31 and interest for mon-
eys paid by the plaintiff as his surety, and the other for $18.75
for fees due the plaintiff as a lawyer. There could not be
much doubt on the reading of this letter as to which of
these two debts was referred to. Though if it was unexplained
by the other letter referred to in it, and no parol evidence had
been introduced, there might be a possibility, that it referred
to the small debt he owed the plaintiff for fees. But when
those other letters and parol evidence are referred to, all doubt
seems to me to be removed. It seems to me, that in some of

the preceding letters the defendant sometimes uses language more or less vague, indefinate or inaccurate; but he frequently uses language, which clearly shows, to which of these two debts he refers. Thus in one of these two letters he says: " I will send you the first money over and above my board; and I think I shall be able to settle this winter." This letter, the counsel for plaintiff in error thinks, shows merely, that the defendant admitted some general indebtedness but no specific debt and only a willingness to settle, leaving the inference that something was to be done in order to come to some terms and agreement. If this were the only letter, it might perhaps be so interpreted; but standing alone it would hardly bear this interpretation and certainly would admit of another. In closing this letter he says: " I will exert myself in every possible way to raise money for you this winter; and I think I shall succeed;" and in another part of this letter he says: "my obligations to you are sacred." It is probable, that the letter, to which this was an answer, would, if the defendant had thought proper to produce it, have shown clearly, whether this was a definite and ascertained debt, which was alluded to, or only a general and indefinite indebtedness requiring a settlement to ascertain what it amounted to. When he says he thinks he will be able to settle this winter, in the absence of the plaintiff's letter, to which this was a reply withheld by the defendant, I think, that we might well understand him to mean, he thought he would be able that winter to pay the debt for which he was dunned. If this was what he meant, he might well say "*I think* I shall be able to settle," that is *to pay*. For if by settle he only meant "make out a statement of account with you and ascertain what was the balance between us," why should he say I *think* I can settle? Certainly the pecuniary embarrassments, under which he was suffering, would in no way hinder such a settlement being made, though it would make it doubtful, whether he would settle in the sense, in which he uses the phrase, that is, whether he would pay.

Judge Parker in *Aylette's ex'r* v. *Robinson*, 9 Leigh 49-50 well says: "If one upon an account being presented to him says: 'It is right, and I will settle it at a future day,' there could be no doubt of his meaning; and a jury would infer a promise." If the letter, to which this was a reply, had been produced by

the defendant, as it might have been, his meaning in saying he thought he could settle this winter would probably have been equally clear.   But whatever doubt there might be about the meaning of this expression and of some others in some of his other letters, if unexplained by other evidence, they are perfectly clear when taken in connection, as they should be, with the proof, that there were no unsettled accounts between the parties ; but there was due from the defendant to the plaintiff a large debt for moneys he had paid for him as his surety.   The payments of money for him as his surety were the sacred obligations to him, which the defendant refers to in this letter, and constitute the debt he thought he would settle, that is pay, this winter.

Other of the defendant's letters show clearly, that the debt he acknowledged to be due in this letter of September 9, 1871, was this debt, and not the only other debt he owed him, that is, the $18.75 for lawyer's fees.   In the very first letter the defendant wrote he says: "I wrote to you on the subject of my debt to you and received no answer.   In the fall of 1864 saw Mr. Green at Powhatan Court House and told him to tell you I had deposited in the Bank of Virginia money enough to pay your and Mr. Hobson's judgment."   The amount so deposited was $1,200.00, as shown by another part of this letter, and it was afterwards all drawn out and used by the defendant, as he states in this letter.   The amount of this deposit shows, that by "my debt to you" he meant this debt for money paid as his surety.   It is also shown by his saying, it was to pay the plaintiff's and Mr. Hobson's judgment; for though they had no judgment, yet Hobson and the plaintiff had paid off a judgment against the defendant, which was obviously what was referred to though in inaccurate language.   Again in another letter he says, he will send him on March first next $50.00.   This was obviously on this debt due the plaintiff as surety; for it greatly exceeded the small debt due for lawyer's fees.   He says further, that he will be able soon to send him $200.00 evidently on this large debt for money paid as his surety.   There are throughout the letters of the defendant expressions, which taken in connection with the parol evidence show, that the only debt referred to in the whole of the correspondence produced at the trial was

this definite and ascertained debt due the plaintiff as money paid as the defendant's surety. I think therefore the acknowledgment of the debt contained in the letter of September 9, 1871, is fully explained, and the debt referred to is rendered perfectly definite and clear by the other letters of the defendant and by the parol evidence. The authorities show, that when this is done and the circumstances show, that a promise may be fairly implied from the explicit and direct acknowledgement of the debt, such acknowledgement will remove the bar of the statute of limitations.

The judgment of the circuit court of December 22, 1877, must be affirmed; and the defendant in error must recover of the plaintiff in error his costs in this court expended and damages according to law.

JUDGES JOHNSON AND HAYMOND CONCURRED.

JUDGMENT AFFIRMED.