# Dudley *v.* Chilton County.

*Summary Proceeding by County, against Tax-Collector and Sureties on Official Bond.*

1. *Bill of exceptions; alteration of.*—A bill of exceptions, when signed by the presiding judge, becomes a part of the record, and the judge has no power to alter or add to it after the adjournment of the term.

2. *Bond of tax-collector; to whom payable, and who may sue on it.*—The official bond of a tax-collector is properly made payable to the State (Code, § 163); and an action thereon may be maintained by the county, as the person injured or aggrieved (*Ib.* § 2917), on account of the failure to pay over or account for moneys collected as county taxes.

3. *Construction of bill of exceptions.*—Whatever of doubt or obscurity there may be in the bill of exceptions, is resolved against the party excepting, and in favor of the ruling of the court below.

4. *Official books relative to assessments.*—The tax-assessor is required to make, and deposit in the office of the probate judge, a book containing a condensed statement of the tax-assessment; and when the assessment has been corrected by the Commissioners Court, the probate judge is required to make another book, for the use of the tax-collector, showing in concise form the amount of taxes due from each tax-payer (Code, §§ 389, 395, 435). Each of these books is an official public document, and may be competent evidence in an action; or summary proceeding, against the tax-collector; if the second has not been completed by the probate judge, the first may be received in its stead; and, if it is uncertain, from the statements of the bill of exceptions, which book was admitted as evidence, it will be presumed to have been the corrected book prepared by the probate judge.

(38)

[Dudley v. Chilton County.]

5. *Official books of county treasurer.*—The book which the county treasurer is required to keep, showing the payments made to him by the tax-collector on account of county taxes (Code, § 845), is an official public document; and the entries therein, being made under the sanction of an official oath, are *prima facie* correct, and are competent evidence as against the tax-collector or the facts stated.

6. *Summary remedy by county, against defaulting tax-collector.*—A summary remedy is given by statute to a county, against the tax-collector and his sureties, for his failure to pay to the county treasurer, within the time prescribed by law, "any money he has collected or received for the county" (Code, §3396); but the remedy can not be extended to the recovery of damages for his negligence in failing to collect moneys which he could and ought to have collected.

7. *Same.*—To authorize a recovery in such proceeding, it is not necessary that the evidence should show with mathematical precision the exact amount collected and not paid into the treasury. The presumption must be indulged, in the absence of proof to the contrary, that he did his duty, and collected all the taxes which he ought to have collected; and when the entire amount of taxes assessed, the amount allowed for errors and insolvency, and the amount of payments made to the county treasurer, are established by proper evidence, enough is shown to authorize a recovery.

APPEAL from the Circuit Court of Chilton.

Tried before the Hon. JOHN HENDERSON.

This was a summary proceeding, by notice and motion, in the name of Chilton county, against James A. Dudley and the sureties on his official bond as tax-collector of said county, for his "failure to pay into the county treasury, within the time prescribed by law, the sum of, to-wit, $1,099.50, being part of the amount of the county tax for said county collected by him while tax-collector as aforesaid, and due and payable by him, as such tax-collector, to the county treasurer of said county, on or before the 1st day of May, 1877"; sought to recover the said amount, with interest from the 1st May, 1877, and ten per-cent. damages; and was commenced on the 20th March, 1878.

The bond executed by the defendants was in the penalty of $5,000, and was dated the 11th October, 1875; and its condition was, that the said James A. Dudley "shall faithfully perform all the duties which are or may be by law required of him as such tax-collector, during the time he continues in said office, or discharges any of the duties thereof." On the trial, as the bill of exceptions states, the defendants demanded a trial by jury; and the plaintiff having read the notice and motion to the jury, "the defendants pleaded to the same." The plaintiff proved by H. J. Callen, the probate judge, the execution, delivery, and approval of the defendants' bond, and then offered it in evidence. "The defendants objected to said bond going to the jury as evidence, because it is made payable to the State of Alabama, and this action is in the name of Chilton county." The

[Dudley v. Chilton County.]

court overruled the objection, and admitted the bond; to which ruling the defendants excepted.

"A book was shown to said witness, who testified that it was the tax-assessor's book for Chilton county for the year 1876; and the plaintiff offered said book in evidence; which showed at the bottom of the column headed '*County Tax*' an aggregate amount, and to said book was made and signed by said probate judge the following certificate : 'I, H. J. Callen, judge of probate in and for said county of Chilton, hereby certify, that the assessor's book for the year 1876 was received by the Court of County Commissioners, and that the amount of State tax is $5,172.02; amount of county tax, $6,896; poll tax, $1,231.50';" signed, "*H. J. Callen*, judge of probate." "The defendants objected to said book going to the jury as evidence; the court overruled their objection, and they excepted. Said witness further testified that, at a term of said Court of County Commissioners, said Dudley, as tax-collector, reported to said court a list of errors and insolvencies amounting to $42.84, as being the amount of errors and insolvencies for said county for the year 1876; and that said amount was allowed and credited to him, as errors and insolvencies for that year. Said witness stated, on cross-examination, that said Dudley once told him he had turned over to his successor a list of unpaid taxes, but that he did not know whether it was so or not, and also his books ; that Dudley resigned said office of tax-collector on the 27th April, 1877, and that A. C. Ward was appointed and qualified as his successor. Said witness further testified, that he, as judge of probate, made out a book from the tax-assessor's book, showing amount of taxes due by the tax-payers of the county ; that he copied the same from the tax-assessor's book, after it had been corrected by the said Commissioners Court, and the county tax had been levied for that year, and that he gave this book to said Dudley, the tax-collector. James M. Parrish, a witness for plaintiff, testified, that he was county treasurer of Chilton county prior to the year 1874, and again since the 16th November, 1877 ; that a book, which was shown him, was the county treasurer's book; that he used it as the county treasurer's book while he held the office the first time, turned it over to his successor in the office, and again received it from his predecessor when he came in the last time, and used it as the county treasurer's book. Said Callen, being recalled as a witness for plaintiff, testified, that the entries made on the 42d page of said book were in the handwriting of W. F. Claughton, who was county treasurer of said county from 1874 to 1877." The entries on said 42d page are here set out in the bill of exceptions,

showing the amount of money received as taxes, and from other sources, on the 9th April, 1877, the aggregate being $29,733.91, and the disbursements, $27,682.03 ; but the entries did not show from whom the several amounts were received. At the foot of these entries was a certificate signed by A. E. Edwards, to the effect that he had examined the treasurer's book, by appointment of the probate judge, "and that the above represents the condition of the treasurer's book up to April 9th, 1877." "Plaintiff offered said book as evidence, and the defendants objected to its going to the jury as evidence ; which objections were overruled by the court, and the defendants excepted. Said Callen further testified, that the stub-book used by said Dudley was not in his (witness') office."

"The above is, in substance, *all the evidence in the case.* On this evidence, the court charged the jury, that before the plaintiff can recover, the evidence must reasonably satisfy the jury that the defendant Dudley, as tax-collector of said county, had collected taxes for the county which he failed to pay over : that the jury may infer, from the evidence before them, the amount of taxes collected by said Dudley for Chilton county, and the treasurer's book is the only evidence before the jury as to the amount paid by him to the county. The defendants excepted to that part of this charge which instructs the jury that they may infer from the evidence before them the amount of taxes collected by Dudley for said county."

The court also gave the following charges, on the written request of the plaintiff : 1. "If the plaintiff makes out a *prima facie* case, and the defendant fails to introduce any evidence, the jury should find for the plaintiff." 2. "If the plaintiff in this motion has shown that a book of assessments for the year 1876, containing, among other things required by law, the county tax made out by the judge of probate as required by law ; and that the same was delivered to the tax-collector of said county, the defendant in this case ; and that he undertook to collect said taxes set out in said book, and continued in the office of tax-collector until May 1st, 1877 ; and that at the April term, 1877, of the Commissioners Court of said county, the defendant, as tax-collector, presented to said court a list of insolvencies and errors ; and that the same were allowed him ; and the plaintiff offered said book in evidence, and also showed by the books of the county treasurer that the amount of county tax entered in said book of assessments, less the amount of errors and insolvencies, has not been paid to said county treasurer ; then the plaintiff has made out a state of facts, to which the jury may look in

[Dudley v. Chilton County.]

ascertaining whether the plaintiff has made out a *prima facie* case." 3. "The tax-book delivered by the judge of probate, under the order of the Commissioners Court, to the tax-collector, is evidence tending to show, after the tax-collector has resigned his office, or his term has expired, that he has collected the amount of taxes entered on said book."

The defendants excepted to each of these charges as given, and requested the following charges, which were in writing: 1. "The jury can only look to the assessor's book, in evidence before them in this case, as proof of the amount of taxes due to the county for the year 1876, and can only look to the county treasurer's book, now before them, as proof of the amount paid over by Dudley; but neither of said books is evidence, nor are both of them, of the amount collected by Dudley as tax-collector and unaccounted for by him; and, if there is no other evidence before them, satisfying their minds that Dudley, as tax-collector, actually collected the amount here sued for, and actually failed to pay the same over to the county treasurer, as by law he was required to do; then the jury must find for the defendants." 2. "The jury must look to the evidence, in order to ascertain the amount actually collected, which he failed to pay over to the county treasurer; and if the testimony fails to furnish them with some certain amount, which was collected by Dudley as tax-collector, and which he failed to pay over to the county treasurer; then they should find for the defendants." 3. "The jury must ascertain from the evidence the amount for which the defendant is liable; and if they can not ascertain any given or particular amount as due the county, from the evidence, then they should find for the defendants."

The court refused each of these charges, and the defendants duly excepted to the refusal of each; and they now assign their refusal as error, together with the charges given by the court, and the rulings on evidence to which they reserved exceptions, as above stated.

A motion was submitted on behalf of the appellee, supported by affidavits, to strike from the bill of exceptions the statement that it contained all the evidence adduced on the trial, being the words which are italicized, on the ground that they were added by the presiding judge after he had signed the bill of exceptions, and after the adjournment of the court.

WILSON & WILSON, and WATTS & SONS, for appellants.

GUNTER & BLAKEY, *contra*.

BRICKELL, C. J.—A bill of exceptions, when signed, be-

[Dudley v. Chilton County.]

comes a part of the record. After the adjournment of the term, the presiding judge can not, in vacation, make in it any change or alteration. It is as completely beyond his control as is the judgment-entry, or other parts of the record. The judge was in error, in adding to the bill the words now moved to be stricken from it. The error is harmless, however, for the bill as it was written and signed would bear the construction that it contained the substance of all the evidence introduced on the trial, in the absence of these words,

The bonds of all public officers, unless it is otherwise provided, must be made payable to the State of Alabama. Code of 1876, § 163. There is no statutory provision, requiring the bond of a tax-collector to be made payable otherwise ; and of consequence, there was no force in the objection to the introduction in evidence of the bond of the collector, that it was payable to the State. It could not properly have been payable otherwise. On all such bonds, the person aggrieved by the wrongful act or negligence of the officer, has the right, and must sue in his on name.—*Morrow v. Wood*, 56 Ala. 5.

The bill of exceptions is rather obscure in its statements, when construed in connection with the instructions given and refused, as to the character of the book styled the "Assessor's Book," which was received in evidence. Whatever of obscurity or doubt there may be, must be resolved against the exceptant, and in favor of the ruling of the court. One of the duties of the tax-assessor is to make in a book a condensed statement of the assessment, and to deliver it to the probate judge.—Code of 1876, § 389. The book then becomes an official and public document. When the assessment has been corrected by the Court of County Commissioners, the probate judge is required to make a book, containing in concise form the amount of taxes due from each tax-payer, and turn it over to the tax-collector.—Code of 1876, § 435. This book is, also, a public, official document. If, as is insisted, it be true, it was the first of these books which was received in evidence, we are not prepared to say it was wholly irrelevant. The probate judge may not have made the second book ; and if he had not, the first book would have been important to show the amount of taxes assessed,—a fact it may have been necessary to prove in showing the amount of the county tax the collector would have collected. The second book, that the probate judge is required to make, it is conceded, would have been admissible in evidence. If it were necessary, construing the bill of exceptions most strongly against the party excepting, rather than place the primary court in error, we would intend, in the face of a mere general

objection, from the uncertainty and obscurity of the statement of the bill, that it was this book which was offered and admitted.

There is no just objection to the admission of the book of the county treasurer, showing the payments on account of the county tax made to him by the collector. The book he is required to keep ; all entries therein are made under the sanction of his official oath, and in performance of official duty. All such books and entries are *prima facie* evidence of the facts stated in them.—1 Whart. Ev. §§ 630-40.

The instructions given the jury seem free from error, and adapted to the evidence. The instructions requested could probably have been given, without affecting the result of the trial; but the court was justified in refusing them. The proceeding is statutory and summary—in derogation of the common law. By construction, the remedy cannot be extended beyond the terms of the statute. By the words of the statute, the remedy is confined to money the tax-collector has received or collected for the county, and failed to pay over to the county treasurer.—Code of 1876, § 3396. It cannot be extended to the recovery of damages for negligence in failing to collect money, which by the use of due diligence the collector ought to have received and paid into the county treasury. If there had been an effort to charge the collector because of such negligence, the instructions requested would have been probably appropriate. No such effect was, or could have been made, under the notice and motion, averring a failure to pay over money collected, and without any averment as to a failure to collect.

There was no conflict in the evidence : it was all introduced by the appellee. It was not necessary that the evidence should have shown, with mathematical or arithmetical precision, the sum of money the tax-collector had received and failed to pay over to the county treasurer. Such certainty is, ordinarily, not attainable, and all the demands of right and justice are satisfied, when the evidence is sufficient to lead the minds of the jury to a particular conclusion.—*Godbold v. Blair*, 27 Ala. 592 ; *Hopper v. Ashby*, 15 Ala. 457. The precise amount of the county tax was shown ; the period for the collection of the tax had passed ; the collector could have claimed no deductions, save so far as he had been allowed for errors or insolvencies by the Court of County Commissioners, and the amount of such allowances was shown ; and the payments he had made to the county treasurer were also shown. The presumption must obtain, in the absence of all opposing evidence, that he had performed his duty—had collected, within the period allowed by law, all the tax, save so

far as he had claimed and obtained credit for errors in assessment, or because of the insolvency of the tax-payer. . If the several instructions requested had been given, their direct tendency would have been to confuse the jury, or to mislead them. All such instructions are properly refused. The jury, from them, would probably have inferred, or could have inferred, that there was some deficiency in the case made by the plaintiff, or that they could draw inferences the evidence would not warrant.

Affirmed.