# CHARLESTON.

## STATE *v.* CUNNINGHAM, COMM., &C.

Submitted March 4, 1890.—Decided March 25, 1890.

1. CONTEMPT OF COURT—EVIDENCE.

It is well settled that a contempt of court is a criminal offence, and the imposition of a fine for contempt is a judgment in a criminal case; therefore, the same principles of evidence apply as in other criminal trials, and the guilt of the respondent must be proved beyond a reasonable doubt.

2. CONTEMPT OF COURT—RES JUDICATA.

Upon the petition of John D. Alderson, the present relator, a rule was ordered by this Court against the county commissioners of Kanawha County, to show cause why a *mandamus* should not be awarded, to compel them to sign a bill of exceptions; they appeared and answered, and the answer not being deemed sufficient cause, a peremptory *mandamus* issued directing them to settle and sign said bill of exceptions in the manner therein prescribed; the relator subsequently filed his petition charging that the respondent, who was a member, and president of said commissioners, had violated the order, and refused obedience to the *mandamus*, and praying for a rule, which has been issued against the said respondent, to show cause why he should not be fined for contempt; *held:* The peremptory writ having issued, its legality, and the authority to issue it can not now be questioned by the respondent; for the matter as to him is *res judicata.*

3. CONTEMPT OF COURT—BILL OF EXCEPTIONS.

The respondent, in reply to the rule for contempt replies, that he did not sign the bill as presented because it did not truly

state the facts ; nor did he sign the bill which the other com-
missioners settled and signed as the act of the board, for a
similar reason ; but that he did settle and sign the bill which
accompanies his answer, and which he says does truly state the
facts as they were proved, or occurred ; *held:* this return is
conclusive, and can not be traversed by the state or the relator in
this proceeding.

4.  CONTEMPT OF COURT—BILL OF EXCEPTIONS.
    There is no rule of practice which prohibits the court, or a
    judge, from taking exceptions, instructions, and other pleadings
    to his office or library for the purpose of examining them, con-
    sulting authorities , and passing upon them ; before doing so,
    it is proper to hear counsel upon them; and as to bills of ex-
    ceptions they may be settled and signed at any time during the
    term.

5.  CONTEMPT OF COURT—BILL OF EXCEPTIONS.
    The writ directed the commissioners to settle and sign the bill
    *"promptly and with all convenient dispatch,"* it was issued
    November 23rd, and served November 26th ; respondent called
    the commissioners together the 29th, and they adjourned from
    time to time until December 23rd, when respondent completed
    and signed the bill accompanying his answer, and on the 27th
    the court or board signed the bill on which the relator obtained
    a writ of *certiorari:* in the mean time the respondent had held
    the regular term of county court and had been afflicted with
    personal indisposition, and illness in his family: *held*—that
    considerable discretion should be allowed to inferior tribunals
    in the discharge of judicial functions, and that looking to the
    only object of a bill of exceptions which this Court can consider,
    *viz:* to perfect the record for an appeal, there was no such delay
    here as ought to subject the respondent to fine or imprisonment.

*Brown & Jackson* for relator.

*J. H. Ferguson, A. Burlew* and *G. W. Patton* for defendant.

.LUCAS, JUDGE :

On the 6th of November, 1888, at the general election held
on that day, the rival candidates for the Federal House of
Representatives from the Third Congressional district of this
State, were John D. Alderson and James H. McGinnis.
There was a demand for a recount of the vote of Kanawha
county, which is in said district, and the vote of several pre-
cincts became involved in controversy. The county com-
missioners, of whom the respondent in the present proceed-
ing was one, acted, as the record discloses, in a very unusual

and very arbitrary manner, and, upon a *certiorari* issued by the Circuit Court of Kanawha, the case was remanded to the lower tribunal, with instructions to proceed with counting the vote, to allow the parties to cross-examine witnesses, to introduce evidence, and to appear by counsel, or in person. Mr. Alderson, taking the ground that the Circuit Court ought to have retained the case, and itself proceeded with the count, took an appeal to this Court, and here the action of the Circuit Court was affirmed, and the cause remanded to the County Court to be there proceeded in as directed by the Circuit Court. See *Alderson* v. *Commissioners*, 32 W. Va. 454. The County Court took the matter up again, and proceeded with the count, and, after reaching a conclusion, a bill of exceptions was presented to them by the counsel of Alderson, and they declined absolutely to sign it, or to take such steps in regard to modifying or correcting it, as they should have done, in accordance with the rule laid down by this Court, in *Poteet* v. *Huntington*, 30 W. Va. 58.

Alderson, thereupon, on the 15th of November, 1889, applied to this Court for a *mandamus* to compel the county commissioners to sign said bill of exceptions, and after rule and answer, this Court, on the 23rd of November following, issued a peremptory *mandamus* directed to said commissioners, which as its exact language is material to our present discussion, I here set out in full.

"This day came again the parties by their attorneys and the respondents here filed an amended answer to the rule heretofore issued which said amended answer the petitioner excepted to; and this case was fully heard upon the petition and rule aforesaid, the answer and amended answer aforesaid, the exceptions thereto and the arguments of counsel thereon; and the Court having maturely considered the same, is of opinion that the answer and amended answer aforesaid are insufficient and that it was the duty of the commissioners of the County Court of Kanawha county to settle and sign the bill of exceptions presented to them by the petitioner; that is to say, it was the duty of said commissioners to carefully examine the bill of exceptions and if they found that the statements and facts recited in it were correctly set forth they should have signed the same; but

if they found that any one or more of the statements contained in the bill of exceptions were incorrect they should have corrected the same in those respects only in which the statements were erroneous but they should not have stricken from the bill of exceptions any statement or fact alleged in it if the same were true, no matter how impertinent or immaterial they may have considered such statement or fact to be, and the commissioners should have added to the bill of exceptions any omitted fact or statement which they deemed material; and having thus settled the bill it was their duty to sign the same.

"It is therefore ordered that a peremptory writ of *mandamus* do issue commanding John S. Cunningham, W. B. Calderwood and Curtis H. Young, commissioners of the County Court of Kanawha county, promptly and with all convenient dispatch, to settle in the manner hereinbefore set forth the bill of exceptions tendered by John D. Alderson in the matter of the recount of the votes cast in Kanawha county on the 6th day of November, 1889, for the office of Representative of the third congressional district of West Virginia in the congress of the United States, and having so settled said bill to sign the same and make it a part of the record of their proceedings. It is further ordered that the writ of *mandamus* aforesaid be made returnable on the first day of the next term of this Court, and that service of an attested copy of this order shall be considered service of the said writ."

This order was served, as appears by the return of the sheriff, on the 26th of November, three days after it was entered.

It is charged by Alderson, the relator, that the respondent, the president of said board of commissioners, disobeyed said order, and upon a petition filed by him in this Court on the 18th day of January, 1890, a rule was issued against John S. Cunningham, the respondent, to show cause if any he can why he should not be proceeded against for contempt of an order of this Court.

It is well settled that a contempt of court is a specific criminal offence, and that the imposition of a fine for contempt is a judgment in a criminal case. *Fischer* v. *Hayes*, 6 Fed. Rep. 68. *Therefore, the same rules of evidence, and procedure*

*apply.* Id. 74. This is the view announced by this Court in *State ex rel. Mason* v. *H. F. Bridge Co.,* 16 W. Va. 864 ; *Rhul* v. *Rhul,* 24 W. Va. 279; *Alderson* v. *Commissioners,* 32 Id. 648.

It is important, therefore, for us to consider the exact nature and language of the charge as contained in the rule. The offence is described as contempt of an order, and we must therefore consider the order. The 27th section of chapter 147 of the Code provides that "courts, and judges thereof, may issue attachments for contempts, and punish them summarily, in case of disobedience of any person to any lawful process or order of the court." In reference to the interpretation of this section, we may consult the decision of this Court, in *State ex rel. Mason* v. *Bridge Co., supra,* p. 865, paragraphs 5 and 6, viz : "In order to justify any punishment in such a case, the process of the court disobeyed must have been its lawful process. By its lawful process, is meant such process *as the court had jurisdiction to issue.*" And in delivering the opinion, Judge GREEN, on page 877, says : " It is settled by the authorities, that if this Court had no jurisdiction to award this process, the parties can not be punished for contempt in disobeying it; for in such a case, the order of this Court granting the *supersedeas* might be treated as a mere nullity."

The respondent, in his amended answer, raises this question by submitting the following proposition : "At the time these proceedings were commenced against him, this case was not in this Court in any form, nor had any steps been taken to bring it here. Section 48 of chapter 39 of the Code specially provides that, 'if a commissioner refuse to sign a bill of exceptions which states the truth of the case, he may be compelled to do so by the Circuit Court of the county by *mandamus.*' The appeal from the County Court in such cases, lies to the Circuit Court, and not to this Court.

The true distinction to be taken in these cases, I think, is between any process or order of this Court issued on *ex parte* application, and its *mandate* issued upon trial and adjudication. The former may be inquired into in any collateral proceeding growing out of it; but after an adjudication, judgment, and adjournment of the term, the matter is *res judicata,* and

can not again be called in question by any one who was a party to the proceeding. The jurisdiction to issue the *mandamus* was necessarily involved in the case against the respondent, and others, in which it was issued, and the decision in that case at a former term, settles the matter, and though we might now doubt the authority to issue it, upon the ground stated by the respondent, we are concluded as to this particular case, by that adjudication, and so also was the respondent concluded by the mandate of this Court. In *Renick* v. *Ludington*, 20 W. Va. 537, it is said : "For the purpose of the first trial of this cause in this Court, the jurisdiction of this Court, as to these appellants, was as much determined as though that point had been made, and directly passed upon by this Court, and if it was not then made, it certainly can not now be questioned. It may be regarded as well settled, that if an appellate court has ever so erroneously decided that it has jurisdiction of a cause, and then proceeds to determine it on its merits, the parties to the cause are bound as *res adjudicata* by the decision of the court, that it has jurisdiction, as well as by the decision of the court on its merits."

I think, therefore, we may regard the question of jurisdiction, so far as this controversy is concerned, as settled. High's Extra. Leg. Rem. § 568. Let us next proceed to the consideration of the exact charge, which I construe to be a contempt of this Court by a refusal to obey its order commanding the county commissioners—"promptly, and with all convenient dispatch, to settle in the manner hereinbefore set forth, the bill of exceptions tendered by John D. Alderson in the matter of the recount *etc.;* and having so settled said bill, to sign the same and make it a part of the record of their proceedings." The charges of violation contained in the petition may be stated under two heads : 1, *the manner* of settlement; 2, *the time* within which a bill was signed.

It is admitted that the court or commissioners acting through a majority of their number, Young and Calderwood, have signed a bill tendered them by Alderson. ·

It is also conceded that this was the act of the commissioners, or county court, and was a compliance with our order.

It is also admitted that the respondent, Cunningham, president of the court, has also signed a separate bill. He did not sign the bill which received the signatures of the other two commissioners. The reason assigned by respondent, in his return, is that he could not conscientiously do so, as the facts were not truely stated therein. This return proceeding from a court or judicial officer must, in accordance with sundry decisions of this Court, be regarded as conclusive, and not the subject of traverse, or further evidence.

In *Douglas & Woodward* v. *Loomis, J.*, 5. W. Va. 542, it is said, "A judge will not be compelled by *mandamus* to sign a bill of exceptions, when he alleges in his return to the conditional writ that the bill does not truly state the facts. The judges have sole power of determining whether the bill is true or not; their return to the writ being conclusive of the case, and not liable to be passed on by a jury." To the same effect are *Poteet* v. *Commissioners*, 30. W. Va. 58, and *Morgan* v. *Fleming J.*, 24. W. Va. 189.

This has been the doctrine from the earliest times, as we learn from the elementary writers: Bull. N. P. 316; 3 Bl. Coms. 362. And the rule is equally applicable to courts of inferior jurisdiction. *Poteet* v. *Commissioners, supra.; People* v. *Judges of Westchester*, 2. Johns. Cas. 118; *People* v. *Judges of Washington*, 2 Caines (N. Y.) 97.

Upon this subject Mr. High on Extra. Leg. Remedies says, p. 202: "An important consideration to be borne in mind in the exercise of this branch of the general jurisdiction by *mandamus* is, that the power of determining whether the particular bill of exceptions tendered, is or is not true, rests exclusively with the court or judge before whom the case was tried, and to whom the writ is directed, and the exercise of this power is beyond control by *mandamus*. All that the judge can be required to do, is to sign such a bill as presents the facts in accordance with his knowledge and recollection, since this must necessarily be the test in determining what particular bill shall be signed. When, therefore, the judge returns that the bill as originally settled by him was settled truly according to the facts of the case as he remembers them, nothing more can be required of him. And when he has already signed one bill of exceptions he

can not be compelled by *mandamus* to sign another and a different one, since it is his own exclusive province to determine the correctness of the bill which he shall sign.

\*    \*    \*    \*    \*    \*    \*

So where conflicting questions arise concerning the facts to be inserted in the bill, and the inferior court has already signed one bill, it will not be compelled to amend it, the question being regarded as within the peculiar knowledge of the judge before whom the case was tried, and the superior tribunal will not, on proceedings in *mandamus*, hear and determine the facts on which the adjudication of the question must depend."

Again, the same author says, in § 215: "The jurisdiction by *mandamus* to compel the signing of bills of exceptions has been extended to inferior tribunals, which though not properly courts, yet partake of a judicial nature and exercise judicial functions. Thus, where a special tribunal is organized under the statutes of a state for the trial of contested county elections, and during a trial before such tribunal exceptions are taken to its rulings, and a bill of exceptions is afterwards tendered for its signature, which is refused, a proper case is presented for a *mandamus*. But it would seem that on a return by the respondents in such case that they have made full compliance with the writ, the Court will decline to hear proof offered by the relator, that the bill of exceptions, as signed, was not true."

If the respondent could not be compelled to sign a bill which he certified did not contain the facts truly stated, it follows *a fortiori* that he can not be punished for not having done so. And if on *mandamus* against him, his return is conclusive as to his reasons for not signing the bill as presented, I see no reason why it should not be equally conclusive in this proceeding. Having reached the conclusion, therefore, that the respondent has made a satisfactory answer as to his *not* signing either the bill tendered by Alderson's counsel, or that signed by the co-commissioners, let us inquire whether he violated the further directions of this Court in settling the bills which he did actually sign. In the Poteet Case, *supra*, from which said directions are substantially taken, the mode of settling is thus prescribed, (30

W. Va. p. 91): "Settling a bill of exceptions, where presented by counsel, I understand to mean, that the court below take the bill as presented, strike from it no facts or statements, however impertinent or immaterial the court may consider them, if such statement or facts are correctly stated, and if any facts or statements are incorrectly stated, the court alters them by changing the bill of exceptions so far as to make the statement of facts correct, taking care to strike out of the bill no part of any statement or any facts further than is necessary to make it correspond accurately with the truth. If there be any statement in the bill or any facts stated, which are without any basis of truth, these and these only can properly be stricken out entirely. If necessary the court modifies such bill by adding to it any statement or fact, which it regards as material, which has been omitted from such bill. When the court has done this it is its duty to sign the bill and make it a part of the record, whenever the case, matter or proceeding can be reviewed, with a single exception, and that is, when a new trial is asked in a common law suit, and the evidence is so conflicting on material points, that the appellate court could not even consider the statement of facts, if they were certified."

In his return the respondent states that he did substantially pursue this course. This being a criminal case, the respondent is entitled both to the presumption of innocence, and that of conformity to official duty (see *Alderson* v. *Commissioners*, 32 W. Va. p. 648), and if the relator traverse the return, he must prove the delinquency of the respondent beyond all reasonable doubt. I can not find in the affidavits or depositions, any such convincing evidence. The gravamen of the charge, in regard to his *manner* of settling, seems to be based upon a misapprehension of the law, and the practice.

The counsel for the relator were evidently under the impression that the order required the Commissioners to meet for the purpose of settling and signing a bill of exceptions forthwith and that when so met, they were obliged then and there *in banc*, to settle the bill presented, taking it up, as was finally done, "section by section," until the bill was completed.

The charge is that their method was not pursued, but that the respondent took the bill, when presented, to his chambers, and there, with the assistance of Calderwood, undertook to change, alter, and transcribe the bill in such manner as to conform to his own views of the facts as he understood them.

Now there is no rule which prohibits the court, or a judge, from taking instructions, exceptions, and other pleadings to chambers for the purpose of examining them, consulting authorities, and passing upon them. Before doing so, it is customary to hear the views of counsel, and the answer in this case, says the identical bill, had already been the subject of extended discussion, and that counsel were free to visit his chamber, and assist in settling his bill.

In 2 Am. & Eng. Encyclop. of Law, p. 221, I find the practice thus defined : " In practice, the judge is requested to note down the exception where the decision is given, and afterwards the bill is made out, *and handed to him* for any corrections or amendments he may suggest at some time during the term."

The bill is " *handed to*" *the judge;* or as Judge GREEN expresses it, " *the judge takes the bill as presented;*" and I can not find it anywhere insisted that the bill must only be examined or considered *in banc,* and that it can not be carried into his chamber, or library, by the judge.

That there was great and culpable disrespect and disregard of counsel, and most manifest bias and partiality shown in respondent's demeanor, there is every reason to infer ; but that the crime imputed to him of deliberate violation of the order of this Court is proved beyond a reasonable doubt, by his *manner* of settling and signing a bill, I am well satisfied is not the case. The charge is also made that he would not again certify the facts already certified in former bills, in the same proceeding. In his affidavit, Calderwood swears that there were many things in the other bills which he also thought incorrect; but yet having once signed them, he thought it his duty to embody them in the new bills. In this view, that, after the adjournment of the term at which the bill is enrolled as a part of the record, neither the judge, nor the court, at a subsequent session, has any power to alter

or amend the bill (unless perhaps for clerical error), Mr. Calderwood was certainly right—(See *Dudley* v. *Chilton Co.*, 66 Ala., 593) and respondent was certainly wrong—perhaps stupidly and obstinately so; but (fortunately, perhaps) the jurisdiction of this Court does not extend to the suppression or punishment of ignorance and stupidity in county commissioners.

I come now to consider the second branch of the indictment against the respondent—which is that he did not "promptly and with all convenient dispatch" settle and sign the bill tendered by the relator.

The peremptory writ issued on the 23d of November, 1889, was served, as appears by the sheriffs' return, on the 26th, and on the 29th, a special session of the Commissioners was held for the specific purpose of carrying out the order of this Court. This same session, prolonging its existence by adjournments of less than three days at a time, concluded its labors by the 27th of December, when it finally adjourned. The respondent, however, certifies the bill which he signed on the 23rd of December, or just thirty days after the writ issued. In the meantime, he had held a regular term of his court for general business, and had been interrupted by personal sickness, and illness in his family.

But this Court in supervising the action of an inferior tribunal in performing a judicial function, will not go into a computation of days and hours. In the performance of a strictly judicial duty, such as settling and signing a bill of exceptions, something must be left to the discretion of the lower court in the conduct of its own business. The only question which we can consider, in this connection, is whether the bill was settled and signed with convenient, that is reasonable, dispatch, for the purpose for which it was intended, *viz.*, for the purpose of perfecting the record for an appeal to a higher tribunal? In a former suit against the same Commissioners, the relator stated in his bill that his object in presenting to them his bill of exceptions was to apply to the Circuit Court of Kanawha for a writ of *certiorari* to correct their erroneous proceedings. (*Alderson* v. *Commissioners*, 32 W. Va. 642.) He disclosed no other reason for haste, and even if he had, this Court would not have been at

liberty to consider any other. We can have nothing to do with the political exigencies of contestant or contestee. We can not consider any ulterior object, which the relator may, as against his opponent, have had in view as a motive for haste.

In considering whether the bill of exceptions was completed in due time, and with convenient dispatch, we can only consider the legal and proper office of a *bill of exceptions*, which is to obtain relief by an appeal to a higher judicial tribunal of the State. For us to look beyond this, would be to fall into the very error which we are called upon to reprobate in the lower court. The atmosphere through which our vision is directed is many degrees higher than that of ordinary political contests, and entirely removed from any partisan discoloration.

I do not know that I can better close this opinion, than by quoting the decision of that elevated and renowned jurist, Chief Justice MARSHALL, rendered in a very similar case in the Supreme Court of the United States, and reported in 8 Peters, 588.

The learned Chief Justice said:

"This motion is for an attachment against the judge of the northern district of New York, for a contempt of this court in refusing to obey its *mandamus*, directing him to reinstate certain suits which had been dismissed from the docket of that court, and to proceed to adjudicate them according to law.

"The suits were reinstated and ordered for trial as directed by this court; but delays have taken place so that a verdict has been given in only one of them, and in that, judgment has not yet been rendered.

"The motion for the attachment is supported by an affidavit of the party, verified by the counsel, giving at great length, a history of the proceedings which have taken place in these causes, both before and since the *mandamus* was awarded. It alleges that since the causes have been reinstated, delays have taken place which are detailed at great length, and are considered as amounting to a contempt of this court, by disregarding its *mandamus*.

"We have only to say, that a judge must exercise his dis-

cretion in those intermediate proceedings which take place between the institution and trial of a suit; and if in the performance of this duty he acts oppressively, it is not to this court that application is to be made."

So in this case, our conclusion is that however partial, and reprehensible the conduct of the respondent may have been, it has not rendered him liable to punishment, under the particular indictment for contempt of this Court, with which he now stands charged.

The rule must be discharged without costs.

SNYDER, President *Dissentiente.*

I am compelled to dissent from the preceding opinion. In my view of the facts in the record, the substance of what they prove and the legal conclusions to be deduced from them are very different from what is stated in said opinion. My dissent, therefore, is more from the conclusions as to what is established by the proofs than from the legal conclusions drawn from the facts as stated in said opinion.

The charges, as stated in said opinion, may be classified under two heads: *First,* as to the manner and conduct of the defendant in respect to preparing the bill of exceptions; and *second,* as to the delay in its preparation.

1. There is certainly and necessarily a broad distinction as to the manner of preparing and settling a bill of exceptions by a single judge, learned in the law, and by a county court, consisting of three members, not presumed to be learned in the law or the legal modes of procedure. While, therefore, there may be, good reason for the rule that a judge may in chambers prepare and sign a bill of exceptions; that rule has no reason whatever to support it when applied to a county court; and it becomes absurd when it is attempted to be used to excuse the conduct of one member of such court, who, without notice to or the presence of his co-commissioners, retires to his private room and there according to his own crude judgment prepares and signs what he may deem a proper bill of exceptions. The facts in this case, as

I understand them, not only prove that this is what was done by the defendant here, but it also shows that he did so against the protest of the counsel for the relator, that he made no effort to obtain the assistance or concurrence of his co-commissioners, in agreeing upon or settling the bill of exceptions, but after having completed and signed the bill, he informed his co-commissioners that there was the bill of exceptions for them to sign; thus compelling them to accept his sole act as the act of the court. When they refused to sign his bill he made no effort to settle the bill so that it might be signed by all of them as it was his duty to do under the positive mandate of this Court, but he simply folded his arms in conscious wisdom and announced that his bill of exceptions was the bill of the court and he could not and would not sign any other. And as an aggravation of this improper and arbitrary conduct, it appears that this bill, while it was carefully kept from public inspection during its preparation, had been accessible to and read by counsel for McGinnis as shown by interlineations and corrections appearing upon it in the handwriting of said counsel.

It further appears from the proofs, that a bill of exceptions, setting forth the evidence and rulings of the court on a former hearing of this matter, had been signed as correct and true by the defendant and others composing the court; and that, at the hearing now in question, the county court decided against the protest of counsel for the relator, that they would not hear the evidence *de novo*, but that they would take the evidence as certified in said bill of exceptions, which they did; and upon the evidence so certified they based and rendered their judgment, yet notwithstanding the fact that they heard no other testimony and based their judgment wholly on the evidence in said bill of exceptions, the defendant refused to sign any bill which included as a part of it, said former bill of exceptions. This was clearly a wilful and intentional disregard of the mandate of this Court, which commanded that no fact, truely stated, however immaterial, should be stricken from the bill of exceptions. Without, therefore, referring to or considering the many other inculpatory facts and circumstances appearing in the record, it seems to me, that the said first charge is fully sustained.

2. In reply to the charge in the petition as to the action of the court in its session held on November 29, 1889, the defendant in his answer says: "It is also true that the commissioners, at that time, refused to hear said bill of exceptions read and discussed by counsel, but it is not true, as stated in the petition, that the commissioners refused to give a reason for their action, but on the contrary they stated distinctly to said counsel that the matter of the contents of the said bill of exceptions and the proper matter to go into it, had been thoroughly discussed before the commissioners and in respondent's opinion the time for further discussion had not yet arrived." And the record shows, as a matter of fact, the time for further discussion, in the opinion of the defendant, never did arrive; for it appears that he then and ever after persistently refused to hear any discussion in court or to permit the counsel for Alderson to point out errors in the bill he had signed, though, as before shown, he seems to have had the aid of counsel for McGinnis in his chambers. But what I desire to call especial attention to here, is the fact insisted upon by the defendant in his answer, that he was so fully informed as to all the facts and matters necessary to the preparation of the bill of exceptions as to render any discussion or assistance of counsel wholly unnecessary, and that in fact the matters were so well understood by the Commissioners as to leave nothing for them to do except the clerical work of striking from the bill of exceptions that which was incorrect and adding thereto such facts or matters as had been omitted therefrom, and yet in the face of this fact and insistence by the defendant he allowed nearly thirty days to elapse before he did this simple clerical work, which by reasonable diligence ought and could have been done in a few hours or at most in a few days; and especially is this true, in view of the fact, hereinbefore shown, that he did not allow his labors to be complicated by any interference or conference with his co-commissioners. All he had to do and all he did was to agree with himself and make the corrections he thought proper, and then the work, according to his pretensions, was done. It seems to me, that the defendant's conduct, taking the facts to be as stated by him, is not only a positive violation of his duty, but a

plain disregard of the express mandate of this Court. The mandate required the Commissioners to act "promptly and with all convenient dispatch," and the defendant well knew the facts and circumstances which made such prompt action important as well as the reasons for putting said requirement in the mandate. The bill of exceptions as the record disclosed were to be used in respect to the contest for a seat in the Congress of the United States. It is a matter of public law, that Congress would meet on the first Monday in December, 1889, a very few days from the time said mandate was directed by this Court to issue. The defendant in his testimony in this proceeding, refers to the circumstances under which this Court inserted in its order the said requirements for prompt action, and from what he states took place in this Court, at that time, in his presence, it is not only fair to presume, but it is impossible to believe otherwise than that he well knew that it was important, if not indispensable, that the bill of exceptions should be completed before the meeting of Congress. The defendant, therefore, not only disregarded the said mandate, but he did so wilfully and intentionally, and as the delay in completing this bill of exceptions would probably, if not necessarilly, defeat the object of the relator in obtaining it, the just and reasonable inference is that the defendant wilfully and deliberately disregarded said mandate for a corrupt and partisan purpose.

The defence of stupidity, urged in behalf of the defendant in the preceding opinion, is one that he has not made for himself. On the contrary he acknowledges his responsibility and attempts to justify his action, and it is by this defence that he must stand or fall.

The return of the officer shows that the mandate of this Court was served on each of the County Commissioners on Nov. 26, 1889, as stated in the preceding opinion, but this is evidently not true, because the copy which was served on the defendant is in the record and has an endorsement on it made by the defendant stating that it had been served on him at 10 o'clock a. m. of Nov. 23, 1889; and in his affidavit he corroborates this fact as to the date of service on him. It will thus appear, that he waited six days before convening the court. For this delay he offers no excuse,

and his explanations for the subsequent delays are untenable and proved to be untrue. I here give these explanations as stated by himself in his affidavit filed in this case: "That very shortly after the writ was issued, the general term of the County Court convened, which occupied some of respondent's time, but the principal business of said term of court was left by affiant to be conducted by Commissioners Calderwood and Young, who knew but little personally of what the bill of exceptions required to be executed by said writ of *mandamus* should contain, while affiant devoted nearly all of his time in chambers in preparing said bill, after consulting with the said Calderwood as to what he knew about the matter, and with the exception of such times as the presence of affiant seemed absolutely necessary in the general term for public business, which was not often, and with the exception of the time affiant was delayed on account of the sickness of him. elf and family, his time was devoted to the execution of said bill of exceptions required by said mandate, wholly neglecting affiant's private business, until the said bill was completed on the 23rd of December, 1889."

Calderwood testifies, that it is not true that defendant consulted him about the matters which should go into the bill of exceptions; and defendant does not state how much time, if any he was delayed by the sickness of himself and family. In fact he does not state either was sick at any time. But if the other statements of his affidavit are true, the time of such sickness, if any, could not have interferred very much with his *devotion* to said bill of exceptions.

To sum up: Notwithstanding the fact, that when the defendant begun with said bill of exceptions he was, according to his own statement, so thoroughly informed and instructed as to the matters it should contain that he refused to hear counsel; and notwithstanding the further fact that he was not interferred with or embarassed by his co-commissioners, for it is proved he never consulted them; and notwithstanding the still further fact contained in his own affidavit that, with some undefined and inconsiderable exceptions, he *devoted* his whole time to the preparation of said bill of exceptions, yet notwithstanding all this it took him nearly

thirty days to complete said bill of exceptions. Can any reasonable man believe that there is any sincerity in this pretension, or that the defendant was honestly and in good faith endeavoring to obey the mandate of this Court by "promptly and with convenient dispatch" settling and completing said bill of exceptions? On the contrary, it seems to me, that his whole conduct shows, beyond a reasonable doubt, a wilful and deliberate purpose to disregard and disobey the mandate of this Court and at the same time manufacture an excuse to escape the just consequences of such disobedience. And not only did he disobey said mandate, but it is apparent that his object in so doing was to defeat the intent of said mandate for a corrupt and partisan purpose. I think therefore that the said second charge is also sustained.

A pure and incorruptible judiciary is the safety of the republic and indispensable for the protection of the lives, liberty and property of its citizens; and consequently, wilful mis-conduct and corruption in any one entrusted with judicial powers, however inferior his jurisdiction, should not only be reprehended, but condemned and punished commensurate with his offence. I think the defendant here is shown to have been guilty of a flagrant contempt of this Court and should be punished accordingly.

Rule Discharged.