# CHARLESTON.

STATE *v.* RALPHSNYDER.

(\*HOLT, J., absent.)

Submitted June 13, 1890.—Decided December 6, 1890.

1. CONTEMPT—ATTORNEY-AT-LAW—EVIDENCE.

A proceeding against an attorney as an officer of the court for contempt is a proceeding for a criminal offence, and the same principles of evidence apply as in other criminal trials, and the guilt of the respondent must be proved beyond a reasonable doubt.

2. CONTEMPT—EVIDENCE.

A case in which the charges stated in the rule were not sufficiently proven to authorize a judgment for a fine against the respondent.

*J. Brannon* for plaintiff in error, cited:
34 W. Va. 607; 16 W. Va. 864; 25 W. Va. 279; 32 W. Va. 640; Acts 1882, c. 128; Code, c. 147, s. 27; Code, c. 160, s. 4; 2 Bish. Crim. Law § 252; Whart. Crim. Law § 3426; 3 Am. & En. Ency. L. 782; 4 Bl. Comm. 287.

*Attorney-General Alfred Caldwell* for the State, cited:
Code, c. 119, s. 3; 22 W. Va. 387; 7 Wall. 373; 19 Wall. 512; 64 Me. 140; 11 Bush 95; 95 Pa. St. 220; 4 Wall. 578; 10 S. E. Rep. 407; 64 Ill. 195; 3 Greene (Ia.) 550; 64 Ind. 641; 1 McCord 379; 15 How. Pr. 142; 67 Pa. St. 169; 9 Phila. 216; 2 Hawk. P. C. 219, 82 N. Y. 161; 10

---

\*Case submitted before Judge Holt's appointment.

M. & W. 28; 6 T. R. 282; 19 Neb. 593; 31 Fed. Rep. 129; 116 Pa. St. 455; 52 Conn. 147.

ENGLISH, JUDGE:

This was a proceeding in the Circuit Court of Preston county against I. C. Ralphsnyder, a practicing attorney in said Circuit Court, for an alleged contempt of said court; and on the 19th day of August, 1889, a rule was awarded against said attorney, in which it is stated that said court is informed that said I. C. Ralphsnyder is a practicing attorney in said court and as such an officer of the court, and that, when on the 15th day of said month the case of the State of West Virginia against John Gridley and Brooks Duvall, who stood jointly indicted in that court for defacing a house, was called for trial, the said I. C. Ralphsnyder appeared for the defendant Duvall and demanded that the defendants be tried separately. He further stated that he was not ready to proceed with the trial, because he had just been employed that day to defend Duvall and was not familiar with the case; that his brother had appeared for Duvall on the trial before the justice. The Court ruled that the parties must go to trial, on that day. On the next day, the 16th day of August, 1889, the attorney for the State elected to try Duvall first. Thereupon said I. C. Ralphsnyder said he did not want them tried severally, and, the Court being reminded that he had so elected the day before, he denied that he had made such election, but the Court decided that he had made the election. The case against Duvall proceeded to trial; the said I. C. Ralphsnyder appearing for the defendant, and conducting the defence for him. He spread out before him notes of the evidence of each witness for the State, as he claimed, who had testified at the trial before the justice. When a witness for the State was being examined, he was asked by Neil J. Fortney, the prosecuting attorney, who appeared for the defendants before the justice, and he answered that I. C. Ralphsnyder had appeared before the justice for the defendant. Thereupon the said prosecuting attorney called the attention of the Court to the statement made by said Ralphsnyder on the previous day that he had on that day been

employed for the defendant; and said Ralphsnyder remarked to him: "What are you going to do about it?" That before the case was through he tendered as evidence in the case said written statement, signed, as he claimed, by the witnesses for the State, which writing, he stated to the Court, he had prepared at the time. Therefore, for the reasons aforesaid, it was ordered that a rule be awarded against the said I. C. Ralphsnyder, and that the sheriff of Preston county, in the name of the state of West Virginia, was commanded to summon the said I. C. Ralphsnyder to appear before the Court on Thursday morning next, at 9 o'clock a. m., to show cause, if any, why he should not be attached for his said contempt of that court, for misbehavior as an officer of said Court in his official character, as set out in the information aforesaid.

On the 22nd day of August, 1889, said Ralphsnyder filed his answer to the rule issued in this case, and the State replied generally thereto, and said defendant moved to have said answer spread upon the records of the Court, which motion was overruled. In this answer the defendant, under oath, sought to purge himself of any contempt of the court, and to either deny or satisfactorily explain every material allegation contained in said information on which said rule was predicated. He is charged in said information with having on the 15th day of August, 1889, demanded that the defendants Gridley and Duvall who stood jointly indicted, should be tried separately, and that on the next day he denied having made such demand. In his answer he denies this statement emphatically under his oath, and says that it was stated that the parties, or one of them, would elect to be tried separately; and his recollecton is that that statement was made by the prosecuting attorney; and defendant then asked who had for his client so elected, and it was then stated by said prosecuting attorney that W. G. Brown, who was an attorney at law for Gridley, had so elected. And he further says that neither at the time stated, nor at any other time, did he demand that said defendants be tried separately; but in fact, then acting for said Duvall, he resisted the proposition that said indicted parties be allowed to sever in the trial. As to the allegation that he claimed, .

on the day the cases were called, to have just been employed by Duvall, he states in his answer that George M. Ralphsnyder, a brother of his, represented said Duvall before the justice; that he waived an examination before said justice, and that, said George M. Ralphsnyder being absent, he was requested to appear for said Duvall in the event his said brother did not return; and, as his brother did fail to return in time for the trial, the friends of the said Duvall on that morning requested him to appear, and a fee was then agreed upon between him and said Duvall. Another matter with which the defendant was charged was that he stated that he was not ready to proceed with the case; and on the next day, when the trial commenced, he spread out before him notes of the evidence of each witness for the state, as he claimed, who had testified at the trial before the justice; and a witness being asked by the prosecuting attorney, who appeared for the defendants before the justice, answered I. C. Ralphsnyder had appeared before the justice for the defendant, when he remarked to the prosecuting attorney: "What are you going to do about it?" Respondent says in his answer that he of course knew at the time that the statement of the witness was incorrect, but that he regarded it as immaterial, but that, if he had had any conception of the intent of the prosecuting attorney, he would have shown otherwise than as stated by the witness that he appeared for Duvall before the justice; that, on the trial before the justice, Gridley alone was examined, Duvall waiving an examination, and the notes of evidence were taken during the examination of Gridley. And he denied any intentional misstatement, prevarication o falsehood in regard to any matters stated on said trial, and prayed that the rule might be discharged.

The evidence in the case being presented to the court as well for the State as for the defendant the judgment of the court was that said I. C. Ralphsnyder was guilty of contempt of the court as charged in said rule; and the court ordered an attachment to issue against him for said contempt; and, said defendant waiving the issuing of said attachment, it was considered by the Court that the State recover of said Ralphsnyder fifty dollars and the costs therein; and thereupon

the said Ralphsnyder applied for and obtained this writ of error.

The judge who presided at the time this alleged contempt was committed has filed an able and extended opinion in support of the conclusion he arrived at in rendering said judgment, and in the course of said opinion has, as I think, taken a step in the proper direction in seeking to exalt the standard of legal and moral ethics among the legal fraternity in this State; and his remarks, if properly considered, may have a much-needed and salutary influence in calling the attention of attorneys to the honorable and responsible position they occupy, and the necessity of honesty and fair dealing on their part towards the court before which they practice.

The question, however, which is submitted to us for consideration is: Was said court correct in reaching the conclusion it arrived at, under the circumstances of this particular case? It has been held by this Court in the case of *State* v. *Cunningham*, 33 W. Va. 607 (11 S. E. Rep. 76) that a contempt of court is a criminal offence, and the imposition of a fine for contempt is a judgment in a criminal case; therefore the same principles of evidence apply as in other criminal trials, and the guilt of the respondent must be proved beyond a reasonable doubt. He starts out, then, with the presumption of innocence in his favor, and this presumption must be overthrown by competent evidence.

Directing our attention, then, to the material charges against the respondent, we find it alleged, that, when the case of the State of West Virginia against John Gridley and Brooks Duvall, who stood jointly indicted for defacing a house, was called for trial, respondent appeared for defendant Duvall, and demanded that the defendant be tried separately; and that on the next day, when the attorney for the State elected to try Duvall first, respondent said he did not want them tried severally; and, the court being reminded that he had so elected on the day before, he denied that he had made such election, but the court decided that he had made such election. Counsel for the plaintiff in error contends that this was a misconception by the court; and although it has been held by this Court in several

cases that, where there is a writ of error to a judgment over-ruling a motion to set aside a verdict and award a new trial on the ground that the verdict is contrary to the evidence, and the evidence, and not the facts, is certified in the bill of exceptions, the court will not reverse the judgment, un-less after rejecting all the conflicting oral evidence of the exceptor and giving full faith and credit to that of the ad-verse party the trial-court still appears to be wrong, yet in this case there are some circumstances detailed by the evi-dence of the witness John Brannon which tend to show that he is correct, and the others mistaken ; and upon these points he stands uncontradicted, and about these circum-stances there is no conflict.

He states that on the day before the trial the plain-tiff in error asked him if he could prevent separate trials for Gridley and Duvall, and that he stated to defendant that the court would likely, if asked for a severance on the trial, grant it, and he could not prevent it; that he was in the court-room sitting on a chair on the jury platform when *State* v. *Gridley* was called on the evening of the 15th, being the day before trial was had of Duvall, and a question was raised whether it should be a joint or several trial, and, this being a question previously talked of between witness and defendant, he paid attention to the question ; and Mr. Fort-ney, the prosecuting attorney, remarked that they would be tried separately; and thereupon plaintiff in error in-quired of said Fortney, what counsel or who had so elected, and that Fortney said that W. G. Brown had so stated ; and defendant remarked that it was not his understanding, or of that import; that said Brown was not then before the court, but some inquiry was made for him, and witness left the court-room, and in passing out of it, saw said Brown going forward towards the court; and witness was not present, and did not hear any statement if made by said Brown. Now, it is hardly reasonable to suppose that the plaintiff in error would have made the inquiries he did of the witness Brannon in regard to his right to have said par-ties tried jointly, or to prevent separate trials, neither would he have asked the prosecuting attorney who had elected to have them tried separately, if he wished them so tried.

Another thing: The witness Jackson is mistaken in regard to W. G. Brown being present, when the conversation was had between the prosecuting attorney and plaintiff in error in regard to said trial being separate; and it is more likely he would be mistaken in regard to the other matter than the witness Brannon, who is an attorney and states the reasons why his attention was particularly called to the conversation, and also that he knows W. G. Brown was not present, because he met him going into the court-room as he passed out; and the evidence of Brannon as to W. G. Brown not being present at the time of this colloquy is confirmed by the witness C. Y. Bishop, who says, when the case was reached, the court asked how they were to be tried, and Mr. Fortney replied they were to be tried separately, and the plaintiff in error inquired, what attorney had said so, and said Fortney replied that Junior Brown or W. G. Brown had decided to try separately, and the plaintiff in error remarked that that was not his understanding about it; that thereupon the court directed said Brown to be called, and in a brief time said Brown came before the court, and said Fortney stated to him that he had stated in court that he (Brown) had stated they were to be tried separately, and that said Brown remarked, "That is correct." Precisely the same facts are stated by the witness C. C. Craig, who said his attention was called to the case for the reason that he had heard that one of them would turn state's evidence, and he was there to see and hear.

Now, even if the rule is strictly enforced in this case, and we exclude the evidence that is conflicting, is there not enough in these circumstances detailed by these witnesses to create a doubt as to whether this election was made by the plaintiff in error or by W. G. Brown, who was counsel in the Gridley case? Ought not the plaintiff in error to have the benefit of the doubt? We think so; but, if there is any question as to this, it will be perceived that the state introduced said W. G. Brown as a witness on its behalf, who stated that he acted as attorney for Gridley on his trial at that term of the court; that, as between him and Ralphsnyder, he (witness) was the first to ask for a severance for the trial of Gridley. This witness for the State, then,

should put at rest the question as to who applied for the separate trial, and he fully confirms the conclusion that we had arrived at from the circumstances stated by Brannon, and the court may have been mistaken in holding that he had made the election the day before, when the Duvall case was called for trial, and the plaintiff in error may have been correct in his denial that he had so elected.

As to the next allegation contained in said rule—that the plaintiff in error stated that he was not ready to proceed with the trial of Duvall, because he had just been employed that day to defend Duvall, and was not familiar with the case; that his brother had been employed by Duvall on the trial before the justice; and that, when the case against Duvall proceeded to trial, he spread out before him notes of the evidence of each witness for the State, as he claimed, who had testified at the trial before the justice; and that, when a witness was being examined for the State, he was asked by the prosecuting attorney, who appeared for the defendants before the justice, and he answered that I. C. Ralphsnyder had appeared before the justice for the defendant (meaning Duvall) and thereupon the prosecuting attorney called the attention of the Court to the statement made by the said Ralphsnyder on the previous day that he had on that day been employed for the defendant; and said Ralphsnyder remarked to him: "What are you going to do about it?" and that before the case was through he tendered as evidence in the case said written statement, signed, as he claimed by the witnesses for the State, which writing, he stated to the Court, he had prepared at the time.

Now, it is clearly shown by the testimony of George Ralphsynder that the plaintiff in error appeared for Gridley before the justice, and that Duvall was not examined at all; that he (witness) had just come to the bar, and, being employed by Duvall, he consulted with the plaintiff in error in regard to the matter; and after consulting with his client, when the justice asked what was to be done in Duvall's case, the plaintiff in error replied that they had concluded to waive an examination; that the evidence taken down was the evidence of *State* v. *Gridley*. The justice was examined, and stated that plaintiff in error moved to quash

the warrant in which Gridley and Duvall were jointly charged, and that his impression was that he was counsel for both; that, when Duvall's case was called, there was some consultation between the said Ralphsnyder and Duvall, and the plaintiff in error came forward, and stated "that Duvall would waive an examination." The witness Schaffer, who was the witness on the trial of Duvall who stated so positively that the plaintiff in error appeared for Duvall before the justice, to which the prosecuting attorney called the attention of the Court, shows how well informed he was about the matter, when he states that both of the Ralphsnyders were present before the justice before whom Gridley and Duvall were to be tried, and that he was there for a short time during the trial, and the plaintiff in error seemed to be conducting the case; and on cross-examination he said he thought Gridley and Duvall were being tried together. The plaintiff in error, as is shown by George Ralphsnyder, had not been employed by Duvall; and the plaintiff in error, in his own testimony, about which there is no conflict, states how he came to be employed by Duvall on the morning of the 15th of August, on account of the absence of his brother. So there was no misstatement of fact in regard to the time of his employment; and although he appeared before the justice, and took down the evidence of the State's witnesses in the Gridley case, *non constat* that the evidence against Duvall would be the same, although they were charged jointly with stoning a house, the evidence may have been very different against Gridley from what it was against Duvall. One may have been guilty, and the other innocent. And it appears that other and different witnesses were introduced at the trial in court against Duvall from those that were introduced before the justice against Gridley. But it is alleged that he offered in evidence on the trial of Duvall the written statement of the evidence before the justice, which he stated he prepared at the time—for what purpose does not appear; but it does appear that he was correct in stating that said statement was prepared at the time he was before the justice for Gridley.

It does not, then, appear to me, from what was shown in

the case, that the plaintiff in error was necessarily familiar with the case against Duvall. It does appear that he had just been employed for Duvall. An arrangement for the fee had been made that morning. And although the plaintiff in error may have been a little slow in making explanations to the prosecuting attorney, and asked him "what he was going to do about the matter," I must regard that as a mere side-bar remark, not intended for the ear of the Court, and I can not think the Court was correct in concluding that he was guilty of violating his professional oath by making such false statements as he is charged with in said rule.

Under the head of "Contempt," p. 777, vol. 3, Amer. & Eng. Enc. Law, contempt is defined as disorderly, contemptuous or insolent language or behavior in the presence of a legislative or judicial body, tending to disturb its proceedings, or impair the respect due to its authority, or a disobedience to the rules or orders of such a body which interferes with the due administration of law, and in regard to the attorneys *etc.*, who are also officers of the Court, by gross instances of fraud and corruption, injustice to their clients, and other dishonest practice. Our statute provides (Code, c. 147, s. 27) that "the courts and judges thereof may issue attachments for contempts, and punish them summarily, only in the cases following: *First,* misbehavior in the presence of the Court, or so near thereto as to obstruct or interrupt the administration of justice; * * * *thirdly,* misbehavior of an officer of the court in his official character." A careful examination of the charges set forth in the rule, and evidence bearing thereon, leads me to the conclusion that the judgment rendered by the Court was not supported by the evidence, and the plaintiff was not guilty of misbehavior, in his official capacity, such as would warrant the judgment rendered. Said judgment must therefore be reversed, and the rule discharged.

Reversed.