# CHARLESTON.

AUGUSTA CROSS RAMSEY *v*. JOHN H. ENGLAND, ADM'R.

Submitted November 4, 1919.   Decided November 11, 1919.

1. EQUITY—*Variance Between Answer and Proofs.*

   The defendant in a suit in equity will be required to abide by the case made in his answer, and will not be permitted, in case the same fails, to take advantage of another case made by the proofs not set up in the answer.  (p. 104).

2. APPEAL AND ERROR—*Review of Decree on Conflicting Evidence.*

   The decree of a circuit court based upon conflicting oral evidence will not be reversed, unless such evidence plainly preponderates in favor of the complaining party.  **(p. 106).**

Appeal from Circuit Court, Barbour County.

Suit by Augusta Cross Ramsey against John H. England, administrator of Stephen Cross, deceased, and others, to cancel a joint note and to recover amounts received from sale of items of personal property.  Decree for defendants, dismissing the bill, and plaintiff appeals.

*Reversed in part.   Affirmed in part.*

*A. M. Cunningham,* for appellant.
*Jenkins & Jenkins* and *Charles M. Murphy,* for appellees.

RITZ, JUDGE:

A number of years ago the plaintiff in this suit intermarried with one Samuel Cross, son of Stephen Cross.  It seems that Stephen Cross was the owner of a small parcel of real estate which he conveyed sometime since to the plaintiff, his daughter-in-law, and to the wife of the defendant, his daughter, reserving to himself a life estate therein.  Subsequently the plaintiff bought the interest of her sister-in-law and became the owner of the entire estate, subject to the life estate of her father-in-law.  Some ten or twelve years ago her husband, Samuel Cross, departed this life.  Until a few months before the death of his son Stephen Cross had been living at the home of the plaintiff and her hsuband, but for a few months just prior to the son's death he had been living at the home of his daughter, Mrs. England.

However, when his son, Samuel Cross, died, he came to the home of his daughter-in-law, and continued to reside there until the time of his death. In the year 1915 the plaintiff, together with her father-in-law, Stephen Cross, made sale of the tract of land upon which they were living for the sum of $1254.00, and purchased another farm for the sum of fifteen hundred dollars, paying thereon the sum of $1125.00 in cash, and executing two notes for the sum of $187.50 each, due respectively at one and two years from date. The cash payment of $1125.00 was part of the purchase money of the old farm. The balance thereof was paid over to Stephen Cross. After the purchase of this farm the plaintiff, together with her family, including her father-in-law, moved into the house upon the land, and she continued to reside there until after her marriage with J. L. Ramsey a few months before her father-in-law's death, her father-in-law continuing to reside there until his death in the fall of 1916, with one of the married sons of the plaintiff, after her marriage and removal from the house to the home of her husband. After the death of Stephen Cross the defendant John H. England was appointed administrator of his estate. Appraisers were likewise appointed, and when they undertook to appraise certain items of personal property as the estate of Stephen Cross, the plaintiff claimed that the same belonged to her, and should not be appraised as belonging to the estate of Stephen Cross. These items included a cow, four hogs, a lot of chickens, a lot of hay, some wheat, a sewing machine, and a few other small items of personal property. The appraisers disregarded her claim, and appraised the same as the property of Stephen Cross. In addition to this there was found among the papers of Stephen Cross one of the notes for $187.50, which had been given for the deferred purchase money upon the farm as aforesaid. As before stated, these were joint notes of Stephen Cross and the plaintiff. Upon the theory that the plaintiff was the principal in this note, and Stephen Cross simply surety, and had paid it out of his own funds, the appraisers appraised this as a debt due the estate of Stephen Cross by the plaintiff. After the appraisement of the items of personal property above referred to the administrator sold the same. Plaintiff contended that it was improper for the administrator to appraise the note for $187.50

as a debt against her, for the reason that it was paid off out of her estate, and not out of the estate of Stephen Cross. She brought this suit for the purpose of cancelling the said note, and for the purpose of recovering from the administrator the amounts received for the items of personal property sold by him, which she claimed belonged to her. The court below found that the note for $187.50 was assets in the hands of the administrator; that the items of personal property claimed by the plaintiff were not hers, but were the property of Stephen Cross, and dismissed the plaintiff's bill with costs, and from this decree she prosecutes this appeal.

So far as the note for $187.50, which was appraised as a debt due the estate of Stephen Cross by the plaintiff is concerned, it is shown that this note was paid off with part of the proceeds of the sale of two horses and a cow. These two horses and this cow were sold for three hundred dollars. $195.00 of this was paid in discharge of one of the notes, the principal and interest thereof amounting to that sum. Fifty dollars was paid upon a note which was outstanding as part of the purchase price for one of the horses, and the other $55.00 was paid as a credit upon the other $187.50 note which was not then due. The plaintiff claimed in her bill that these two horses and the cow which were sold for this $300.00 belonged to her, and that when this note was paid out of the proceeds of the sale it was a discharge thereof. She also contended that the other items of personal property above mentioned, and which were appraised by the appraisers and sold by the administrator, belonged to her, and she says she is willing to take from the administrator the amount he received therefor at the sale instead of attempting to recover the personal property in kind. The answer of the defendant admits that the two notes of $187.50 each were given for the deferred payments of purchase money on the farm above referred to. This answer denies, however, that this farm was purchased by the plaintiff. It alleges that the farm was purchased by Stephen Cross for the sum of $1500.00, and that he acted in said purchase in his own behalf, and had the deed to said land made to the plaintiff, and had her join in the execution of the two deferred purchase money notes simply for the consideration that she was to take care of the said Stephen Cross during his

natural life. The answer denies that the two horses belonged to the plaintiff, and denies that the other property, the value of which she seeks to recover, belonged to her.

Much evidence is taken in this case by both parties, a large amount of it being purely hearsay, and for that reason inadmissible. The first question that presents itself to us is, can the defendant under the allegations of his answer insist that the $187.-50 note is a debt due the estate of Stephen Cross by the plaintiff? He sets up a theory in his answer in regard to the execution of this note which makes his decedent the principal in the transaction, and primarily responsible for the payment of the note. Can he disregard that allegation and insist that it is the obligation of the plaintiff paid by his decedent as her surety? It is a general rule of equity pleading that a defendant is bound by the allegations of his answer. If he sets up a particular state of facts which he claims defeats the plaintiff's right to recover, and this fails him, he cannot then rely upon another inconsistent theory not pleaded. Beach, Modern Equity Practice, § 387; *Cavender* v. *Cavender,* 114 U. S. 464; *Lippincott* v. *Ridgway,* 11 N. J. Eq. 526; *Mead* v. *Coombs,* 26 N. J. Eq. 173. It would seem that the defendant is bound by the effect of the allegations of his answer that this purchase was one by Stephen Cross himself, and that he procured the deed to be made to his daughter-in-law as a gift, or rather in consideration that she would maintain him during his life. If this is true, then the payment of one of the deferred purchase money notes by Stephen Cross would be no more than a payment by the party primarily liable therefor.

This might dispose of the question raised here so far as the validity of the $187.50 note as a claim against plaintiff is concerned. It is necessary, however, to consider the plaintiff's claim to the other items of personal property, and that being so we will likewise consider her status in regard to the horses and the cow which produced the money with which this note was paid. Admittedly the cow which was sold with the two horses and produced the $300.00 was the property of the plaintiff. It is practically conceded that the value of this cow in the transaction was $50.00, so that fifty dollars of this purchase money belonged to the plaintiff. Of the other $250.00, fifty dollars was ap-

plied to pay a note which was due to a former owner of one of the horses, so that whether it was the property of the plaintiff, or the property of Stephen Cross, matters not, so far as that fifty dollars is concerned, as whoever owned the horse owed the debt. The evidence in regard to the ownership of this property is that one of the horses was purchased by Stephen Cross and his grandson, Lee Cross, from one Jake Coonts for the sum of $110.00; that $20.00 of this money was paid in cash, and that this $20.00 was furnished by Lee Cross, who was at that time a minor; that for the balance of the purchase money a note was given, and that this note was taken up by Stephen Cross with the money received by him from the sale of the farm above referred to. As before stated, this farm was owned by the plaintiff subject to the life estate of Stephen Cross, and the farm which they purchased and substituted in its place was held by the like title. It is quite clear that the purpose was to invest the proceeds of the first farm in the second farm, and to place the parties in exactly the same position in regard to the second farm that they were in regard to the first, so that when this money was received from the sale of this horse, and was applied to pay on the deferred purchase money note on the farm, it went where in equity and good conscience it belonged. In regard to the other horse, the evidence is not so clear. It appears that a horse was purchased, and a note given for $50.00 for the balance of the purchase money. This horse was traded by one of the plaintiff's sons for another, and he paid in addition a small sum of money, which he claims was his own. It was the horse thus obtained that was sold with the other horse and the cow, and the purchase money of three hundred dollars obtained therefrom. Much evidence is taken on both sides which does little more than cloud the question at issue. One thing is proven very clearly, and that is that Stephen Cross knew all about the sale of these two horses and the cow, and participated therein, and that he intended the purchase money received from them to be applied to the payment of the notes on the land. In fact, it is very clearly shown that this was the purpose in selling these horses and the cow. He was anxious if he could before he died to have this land cleared up and these debts paid off, and his daughter-in-law agreed with him in this view. The application of the purchase

money was made to the note quite awhile before his death, and he never raised any objection to that use of the purchase money. In fact, it was his express desire that it should be so used. This, together with the other evidence in the case, convinces us that whether this horse belonged to Stephen Cross, or to the plaintiff, is not very material. It was the clear purpose of both of the parties to utilize the purchase money for the payment of this debt on the land. It appears that Stephen Cross had lived with the plaintiff for many, many years. This was the only home he had. She and her children took care of him in his declining years when, according to the evidence, his own daughter declined to allow him to live at her home, and it is but natural that he should have desired to leave this farm to her and her family as free as possible from incumbrances. We are well satisfied that the note for $187.50 should be treated as paid and discharged, and not as a liability against the plaintiff.

In regard to the cow claimed by the plaintiff, the evidence is that this cow was bought from one Charley Coonts, and that he received therefor a calf, a stack of hay, and eight dollars in money. It is conceded that the calf was the property of the plaintiff. The hay stack received by him as part payment for the cow was acquired in this manner. When the plaintiff purchased the farm upon which Stephen Cross was residing at the time of his death the vendor reserved this stack of hay which was there on the farm. Subsequently it was purchased from the owner and was paid for by one of the plaintiff's minor daughters working for the owner thereof until the debt was discharged. This is shown by the testimony of the plaintiff, of her daughter, and of the party from whom the hay stack was purchased. The evidence as to who furnished the eight dollars is not so satisfactory. The plaintiff and one of her daughters testify that the daughter worked out and earned some money which was paid in cash, and in this way the eight dollars was acquired. From these facts we are constrained to hold that this red cow also belonged to the plaintiff.

The evidence in regard to the other items of property claimed is not at all satisfactory. Some of it, that is to say, the hay and wheat left upon the farm, are evidently emblements, and belonged to the life tenant in the absence of any other showing.

As to the other items, the court has found that they were the property of Stephen Cross at the time of his death, and, in view of the uncertain state of the evidence, we will not disturb that finding.

We are of opinion, therefore, to reverse the decree of the circuit court so far as it holds that the note of $187.50 is a claim against the plaintiff in the hands of the defendant, and that the cow referred to was the property of defendant's decedent, and also so far as it decreed costs against the plaintiff; and affirm the same in all other respects; and to enter a decree here cancelling the said note for $187.50, decreeing in favor of the plaintiff for the sum of fifty-two dollars, the amount received by the administrator for the cow sold by him, and for costs in favor of the plaintiff, both in this Court and the court below.

*Reversed in part. Affirmed in part.*