STATE *ex rel.* HOOSIER ENGINEERING COMPANY

*v.*

L. D. THORNTON

(No. 10431)

Submitted April 22, 1952. Decided June 3, 1952.

HAYMOND, JUDGE, dissenting.

FOX, JUDGE, not participating.

Poffenbarger & Bowles, Martin C. Bowles, for plaintiff in error.

Spilman, Thomas & Battle, Howard R. Klostermeyer, for defendant in error.

LOVINS, JUDGE:

Defendant, L. D. Thornton, complains of the final judgment of the Circuit Court of Kanawha County, entered on August 9, 1951, finding defendant guilty of contempt of court, and sentencing him to confinement in the Kanawha County jail for a period of six months and imposing a fine of $500.00. To this judgment, as later modified by the court on its own motion, this Court granted a writ of error and supersedeas on October 8, 1951.

On August 4, 1951, Hoosier Engineering Company, a corporation, after issuance of process on the same day, filed a bill in chancery, supported by affidavits, in the Circuit Court of Kanawha County against defendant, individually and as president of Construction and General Laborers Local Union No. 1353, and others not involved in this proceeding, alleging the existence of a labor dispute, acts of violence and irreparable injury to plaintiff, and praying that the defendant, and other parties, be restrained from intimidating employees of the plaintiff engineering company, and from doing other acts designed to prevent performance of certain construction work, in Kanawha County.

On the same day the circuit court granted the injunction, prohibiting the defendant Thornton and others from attacking, assaulting, coercing, threatening or intimidating

any employee of the plaintiff; from damaging or destroying any property belonging to the plaintiff; from congregating near the garage or vehicles of plaintiff; from trespassing upon property of plaintiff or upon or within twenty-five feet of property upon which plaintiff's work was to be performed; and from doing or committing any other unlawful act to prevent the plaintiff from performing its contract. Peaceful picketing was provided for by the decree.

The injunction decree was served upon defendant on August 6, 1951, at 8:45 A. M., by delivery of a copy thereof to him personally. A copy of the decree was posted on an International truck owned by the engineering company on August 4, 1951, and at 1:00 A. M., August 6, 1951, a copy of the decree had been posted on the door of the garage occupied by the enginering company.

On August 7, 1951, pursuant to a petition filed by Hoosier Engineering Company, under the same style as the original bill of complaint, defendant, and others not here involved, were summoned under a rule issued by the Circuit Court of Kanawha County to show cause why they should not be held in contempt of court for violating the above mentioned injunction decree. The rule was made returnable August 9, 1951, at 9:30 A. M. On the return day of the rule a joint answer of defendant and other parties named in the rule was filed, denying the allegations contained in the petition praying for the rule. Before the hearing on the rule began, the trial court called to the attention of counsel the fact that the proceeding should be styled "State of West Virginia at the relation of Hoosier Engineering Company," and permitted an amendment to that effect, over defendant's objection. Immediately thereafter, counsel for defendant moved the court for a continuance, upon the ground that counsel had not had sufficient time to investigate, talk with witnesses, and prepare the case for trial. The trial court overruled the motion, to which ruling defendant by counsel excepted. Counsel for defendant then made a motion for the separation of wit-

nesses, and this motion was also overruled, and exception was duly saved.

At the hearing relator, Hoosier Engineering Company, offered testimony of a number of its employees to detail the disturbances which took place on August 6th and 7th, 1951, which were alleged to have been violations of the injunction decree, and particularly with reference to the conduct of defendant. We find very little evidence tending to establish knowledge or information on the part of defendant as to the issuance of the injunction decree, and none as to the contents thereof, prior to the service of the copy of the decree on him at 8:45, on the morning of the sixth of August. Defendant testified that he had no such information before the service of the copy of the decree. Since the trial court, however, found that defendant had actual knowledge thereof, the facts will be dealt with as if defendant did obtain such information before 8:45 o'clock on the morning of the sixth of August, as indicated in the testimony of Roy Allen, who was an employee of the engineering company and testified on behalf of that company. Defendant could not, of course, be guilty of contempt in regard to an act occurring before he had received notice or information of the issuance of the injunction against him.

There is no question that a large number of men belonging to the union of which defendant was president, was gathered at or in the vicinity of the garage of the engineering company, in the City of Charleston, prior to 8:45 on the morning of the sixth. Apparently the men began to gather there about six o'clock and continued to arrive until after ten o'clock, when the trucks of the engineering company left the garage. It seems certain that certain acts were committed there, both before and after 8:45, which would constitute violations of the injunction decree, assuming that proper notice of the injunction had been received by the parties committing the acts. The problem here is to determine whether defendant committed or participated in the commission of any such act

or acts after having received information of the issuance of the injunction.

The principal acts claimed to constitute such violations during the time the men were congregated together about the garage, consisted of threats made against the employees of the engineering company; the moving of a pickup truck belonging to the engineering company so as to block the removal of other trucks from the garage; an attempt to overturn another truck which an employee of the engineering company undertook to remove from the garage; an attack upon an employee of the company while attempting to remove a truck from the garage; the throwing at the employees of the engineering company of certain objects including "tomatoes, apples, hard biscuits and so forth."; and threatening gestures with shovels, rubber hose and other weapons. The exact hour of the commission of these alleged violations can not be determined with any degree of accuracy. They all occurred before ten o'clock of the morning of the sixth.

Considerable evidence relates to the interference, by three or four of the members of the union, with the removal of a truck from the garage about ten o'clock of the morning of the sixth. City police officers were on the scene at that time and prevented any serious trouble. Defendant was across the street from the garage at the time and immediately crossed the street with the police to the truck. But there is no indication as to whether he was opposing the action of the police or assisting in preventing any improper action by the members of the union. Thereafter the trucks of the engineering company moved out of the garage, loaded with its employees, and were driven to a point near where work was to be performed. There is no question that defendant stayed in the vicinity of the garage of the engineering company until after the trucks were moved out, and that he moved about among the members of his union then assembled there. No person testified to the effect, however, that he heard defendant make any threat against employees of the engineering company, or that anyone saw him engaged in any act

interfering with that company's employees or removal of its trucks, or even heard him say anything to any member of the union indicating his approval of any such action. . On the other hand, there is very substantial evidence showing that members of the union continued to arrive at the scene until after the trucks left the garage, and that defendant remained there, after having been served with a copy of the injunction decree, to advise them, as well as those previously present, of the issuance of the injunction and of the order limiting the actions of the union to peaceful picketing and, in general, to prevent any violation of that order.

After the trucks of the engineering company left the garage a number of union members, riding in probably twelve or thirteen automobiles, followed them to the vicinity of Grapevine Hollow, several miles from Charleston, and defendant drove one of the automobiles carrying union members. These cars parked a distance estimated at from one hundred and fifty to three hundred feet from where the trucks parked. No violence ensued, though some threats appear to have been made by some of the union men, not identified, who arrived in the automobiles. Such threats were discontinued upon orders from defendant. After alighting from his automobile defendant approached Roy Allen, who apparently was in charge of the engineering company's employees and who belonged to a different union, apparently in an effort to negotiate a settlement of the differences. Allen admits that he and defendant discussed the matter of the men working for the engineering company crossing the picket line. Some conflict exists in the evidence as to what was actually said by defendant at that point. But, without detailing the statements of the various witnesses, the evidence appears to us to clearly show that defendant permitted or countenanced no act of violence or intimidation. Allen testified that the union men ceased making threats upon orders from defendant, indicating, we think, that the efforts of defendant were to prevent violence or intimidation, not to invite or countenance such acts. On the following morning, August 7, a large number of union men gathered at the garage of

the engineering company before time for the company's trucks to leave the garage. Defendant was at the garage that morning and testified that he was there for the purpose of assisting in establishing a picket line, as was his duty as president of the union, and as authorized by the injunction decree, and that it was usual, in such circumstances, for members of the union to report each morning to find whether any orders as to work had been issued. No difficulty was experienced by the company in removing its trucks from the garage, and no act of violence or intimidation is charged to have occurred there on that morning. A number of automobiles, carrying union men, followed the trucks toward the place of work of the company employees. The trucks did not proceed to that point, but passed the intersection of the public road leading to that point, and some distance beyond the intersection turned back toward Charleston to the garage. No trouble was experienced, unless the delay apparently caused from the turning of the automobiles on the highway be considered as such, except that defendant, while the trucks and automobiles were being driven back toward Charleston, is charged with having improperly driven his own automobile by weaving in and out of the line of trucks and in not properly yielding the road to the trucks, at different times. We think such charge may be entirely disregarded as acts of intimidation, since the employees had already voluntarily decided not to work that day, and since the highway was then being patrolled by members of the Department of Public Safety.

Defendant testified to the fact that he participated in none of the acts described as constituting a violation of the injunction decree; that he did not direct or countenance the same; and that he made no threats against any of the engineering company's employees, or otherwise. He contends that his efforts at all times, after receiving information of the injunction, were to instruct and persuade the members of the local union of which he was president to obey the injunction decree. He is strongly supported in his contention by a large number of witnesses who observed his actions during the times material, and heard

his conversations. Some of these witnesses are in no way connected with either the engineering company, the union doing work under contract with that company, or the local union of which defendant is president.

Considering the evidence, with all proper inferences arising from facts proven, we find it insufficient to support the trial court's conclusion that defendant was guilty, beyond any reasonable doubt, of having violated the injunction decree. The most that can be stated in favor of the finding is that defendant remained in the vicinity of the garage after the service of a copy of the decree upon him; that he conferred with the union men present, directing them to discontinue threats of violence; that he drove an automobile, along with other union members' automobiles, to Grapevine Hollow and there talked with Roy Allen about their differences and there persuaded or directed the union men to cease making threats, or committing acts of violence and that on the morning of the seventh, he was again in the vicinity of the company's garage, and again drove an automobile toward the vicinity of the place of the company's work, and that he obstructed the movement of the company's trucks on the highway, while returning to the garage, after the employees had elected not to perform any work that day. In *State v. Bittner,* 102 W. Va. 677, 136 S. E. 202, 49 A. L. R. 968, Point 2, syllabus, it is held: "A trial for criminal contempt is a quasi criminal proceeding, and the rules of evidence in criminal trials apply thereto. In such trial the guilt of the accused must be proved beyond reasonable doubt." See *State v. Eno,* 135 W. Va. 473, 63 S. E. 2d 845; *State v. Davis,* 50 W. Va. 100, 40 S. E. 331; *State v. Ralphsnyder,* 34 W. Va. 352, 12 S. E. 721; also, defendant was entitled to the benefit of a presumption of innocence, as in other criminal prosecutions. *Calamos v. Commonwealth,* 184 Va. 397, 35 S. E. 2d 397.

Inasmuch as another trial of the contempt charge may be had, we are of the opinion that certain of the other errors assigned by defendant should be discussed briefly. As to the contention of defendant that the court erred in

not granting the continuance of the hearing, we find no error. The question of the granting of a continuance was a matter within the sound but reviewable discretion of the trial court, and no abuse of that discretion has been shown. *State* v. *Eno, supra.*

As to whether the court abused its discretion in denying the motion, timely made, for a separation of witnesses, the members of the court participating in this decision not being in accord, are of the opinion that any discussion of the question here would not be helpful.

There was no error in the action of the court in permitting the amendment relating to the style of the proceeding. No prejudice to the defendant could possibly have resulted therefrom. *Alderson* v. *Commissioners,* 32 W. Va. 640, 9 S. E. 868, 5 L. R. A. 334, 25 Am. St. Rep. 840.

Defendant contends that the court erred in admitting evidence of violations of which he was not informed, either in the petition for the rule or in the rule. Neither the petition nor the rule states any violation as having occurred on the seventh of August. Considerable evidence was admitted relating to the activities of defendant on the seventh, and the court found and held that defendant had violated the injunction decree by leading the union men behind the company trucks to Grapevine Hollow, on August 7, and that the company employees were, by the fact that a large number of union men were present, prevented from doing any work on that day. Upon objection to the introduction of such evidence, counsel for defendant stated his reason for the objection in this langauge: "I object, because under the citation in the rule there is no charge made, or in the petition, that anything occurred on the 7th. It is all confined to the 6th of August and prior thereto." The court ruled, "The petition is very general. I think if it occurred at any time after the notice was served it is proper." Whereupon counsel for relator stated: "My understanding is that all acts in violation of the injunction from and after the date of service, is proper." The court then replied, "That is correct. The objection is overruled." An exception was saved. As be-

fore noted, considerable evidence relating to alleged violations on the seventh was admitted by the court. We are of the view that the ruling of the court constituted prejudicial error.

It is true, of course, that the exact day of a violation may not be material, but here it is not the day that is involved, but the fact that no violation is charged. The violations charged as having occurred on the sixth are separate and distinct violations. To hold that any violation of an injunction decree can be proved if it occurred after service of notice of the issuance of the injunction, whether or not charged in any pleading, would be tantamount to holding that a defendant could be convicted upon proof without having had any notice of the charge against which he was entitled to defend himself. In *State* v. *Lewis*, 113 W. Va. 529, 168 S. E. 812, this Court stated: "* * * And, since a prosecution for contempt is in the nature of a prosecution for a crime, such affidavit or information should state the acts constituting the offense with as great certainty as is required in criminal proceedings. *State* v. *Bittner*, 102 W. Va. 677, 136 S. E. 202; *State* v. *Davis*, 50 W. Va.. 100, 40 S. E. 331; *State* v. *Ralphsnyder*, 34 W. Va. 352, 12 S. E. 721; *State* v. *Cunningham*, 33 W. Va. 607, 11 S. E. 76." In *State* v. *Komar*, 113 W. Va. 526, 168 S. E. 810, this Court held: "To support an adjudication of contempt the information or affidavit, upon which the rule is issued, must show on its face facts sufficient to constitute the offense." See *State* v. *Gibson*, 33 W. Va. 97, 10 S. E. 58; 17 C. J. S., Contempt, Section 72.

Relator would rely upon the rule followed in *Farley* v. *Farley*, 136 W. Va. 598, 68 S. E. 2d 353, to the effect that where a case is tried by the court in lieu of a jury, the admission of illegal or improper testimony will not constitute reversible error. That rule, however, can not be applied in the instant proceeding. It is based upon a presumption that the trial court would give no weight to illegal or improper evidence. But here the evidence objected to related to supposed violations of the injunction decree without any foundation for the supposed charges

having been laid in any pleading, and the trial court announced that he believed the evidence to be proper, and actually held that the defendant had violated the injunction, the holding being wholly based upon that evidence. With the record clearly showing that the trial court did give weight to the illegal and improper evidence, the presumption no longer existed. It was clearly rebutted.

The conclusions reached herein dispose of all the material assignments of error briefed. The finding of the guilt of defendant is set aside, the judgment of the trial court is reversed, and the case is remanded to the Circuit Court of Kanawha County.

*Reversed and remanded.*

HAYMOND, JUDGE, dissenting:

Though I agree that each of the two syllabus points correctly states an abstract principle of law, I challenge and deny the applicability of each principle to the facts disclosed by the record in this case and dissent from the conclusion reached by the majority of the Court to reverse the judgment of the circuit court.

The judgment of the circuit court, of which the defendant L. D. Thornton complains, found him guilty of willful and deliberate violation of an injunction previously issued by that court and sentenced the defendant Thornton to imprisonment in the jail of Kanawha County for a period of six months and to pay a fine of $500.00. The foregoing judgment, originally entered August 9, 1951, was subsequently modified by the court on its own motion on August 30, 1951, during the same term of court, and, as modified, reduced the term of imprisonment to a period of thirty days in the county jail and the fine imposed to $250.00. The injunction which the defendant Thornton was charged with violating was issued against him and others, including DiTrapano and Skeens, on August 4, 1951, and enjoined and inhibited the defendant Thornton, individually and as President of Construction and Laborers Local Union No. 1353, A. F. of L., and other named defendants, from attack-

ing, assaulting, threatening, coercing or intimidating any employees of Hoosier Engineering Company, the plaintiff in the suit and the petitioner in this contempt proceeding; from damaging or destroying any property of the plaintiff or any of its employees; from congregating about or near a garage or any vehicles of the plaintiff or trespassing upon the premises of the plaintiff or the right of way of the Appalachian Electric Power Company; and from doing or committing any other unlawful act to prevent the plaintiff from performing work in constructing a power line for that company. The foregoing injunction, however, preserved the right of the local union to maintain not more than two peaceful pickets at the garage of the plaintiff and two peaceful pickets at points at least 25 feet from the right of way of the company on which the power line was in process of construction by the plaintiff. A copy of the injunction was posted on one of the trucks in the garage of the plaintiff on August 4, 1951, and at or near the door of the garage at 1:00 a. m. on August 6, 1951. A copy was also delivered to the defendant Thornton by a constable about 8:45 a. m. or 9:00 a. m. on August 6, 1951, while he was in a crowd of approximately 150 persons which had congregated upon the streets and the sidewalks near the garage of the plaintiff between 6:30 a. m. and 10:00 a. m. on that day. Though the defendant Thornton, in his verified answer to the petition upon which a rule returnable August 9, 1951, was issued on August 7, 1951, denied that he knew that the injunction had been awarded until after 11:00 a. m. on August 6, 1951, and in his testimony swore that he did not know of the existence of the injunction until he was served with a copy about 9:00 that morning, an employee of the petitioner testified that he told the defendant Thornton before 8:00 a. m. on August 6, 1951, that a copy of the injunction had been posted at the garage and that the defendant Thornton replied that the injunction meant nothing to him.

The petition upon which the rule was awarded and the rule charged the defendant Thornton with these acts in violation of the injunction: (1) That about 100 or 200 men

armed with rubber hoses, ax handles, bricks, rocks, soft drink bottles and other weapons, and under the leadership of the defendant Thornton and a man named Skeens, surrounded the garage of the plaintiff at Clendenin Street and Virginia Street in Charleston, West Virginia, between 6:30 a. m. and 11:00 a. m. on August 6, 1951, and that those men, led by Thornton and Skeens, placed roofing nails in front of and behind the wheels on trucks of the petitioner, threw hard apples, tomatoes and other objects at its employees and vehicles, and broke a window in one of its trucks in its garage; and (2) that approximately 100 men led by the defendant Thornton and Skeens, in 10 or 12 passenger automobiles, armed with pipes, clubs and other weapons at about 11:00 a. m. on August 6, 1951, followed a group of 25 to 30 employees of the plaintiff from its garage at the corner of Clendenin Street and Virginia Street in Charleston to their place of work near Grapevine Hollow and overtook the employees of the plaintiff at that place about noon, and that the defendant Thornton there threatened them with bodily harm if they proceeded with their work.

The assignments of error of the defendant Thornton that the circuit court erred in refusing to grant his motion for a continuance of the hearing and in permitting the amendment relating to the style of the proceeding were properly held to be without merit by the majority of the Court. In my opinion the action of the circuit court was also proper in denying the motion of the defendant Thornton that the witnesses called in behalf of the respective parties should be separated. All the witnesses appear to have been present together in the crowd in the courtroom during the hearing, and it is clear that the denial of the motion resulted in no prejudice to any right of the defendant Thornton.

I emphatically disagree with the holding of the majority that the action of the circuit court in permitting the introduction by the petitioner of evidence relating to the acts and the conduct of the defendant Thornton, on August 7, 1951, as one of the group of men with whom he associated

at that time, constituted prejudicial error. Though the petition and the rule do not charge the defendant Thornton with the commission of any acts on August 7, 1951, violative of the injunction and, for that reason, any such acts established by evidence could not form the basis of any judgment of conviction in a criminal prosecution for contempt, evidence of the acts and the conduct of the defendant Thornton on August 7, 1951, similar to those charged and shown by the evidence to have been committed and participated in by him on August 6, 1951, in violation of the injunction, was clearly admissible for the purpose of showing his motive or intent with respect to the acts and the conduct charged to have been committed by him on August 6, 1951. *State* v. *Hudson,* 128 W. Va. 655, 37 S. E. 2d 553, 163 A. L. R. 1265; *State* v. *Lewis,* 133 W. Va. 584, 57 S. E. 2d 513; *State* v. *Evans,* 136 W. Va. 1, 66 S. E. 2d 545. In *State* v. *Hudson,* 128 W. Va. 655, 37 S. E. 2d 553, 163 A. L. R. 1265; in which the defendant was indicted for violation of Section 11, Article 10, Chapter 25, Acts of the Legislature, 1939, Regular Session, this Court held in point 3 of the syllabus that: "In a criminal case proof of another offense chargeable to the defendant is admissible to show motive or intent, if such other offense is similar and near in point of time to, has some logical connection with, and tends to establish the commission of, the specific offense charged against the defendant, and indicates that such specific offense is part of a system of criminal action." In the recent case of *State* v. *Evans,* 136 W. Va. 1, 66 S. E. 2d 545, a prosecution for criminal abortion, this Court also held that other and similar acts, prior to, contemporaneous with, or subsequent to, the act charged, may be shown when closely connected with it in point of time and which, if true, disclose criminal intent on the part of the defendant to commit the act charged if such subsequent acts are accompanied by evidence of prior or contemporaneous acts of like nature.

It is obvious that the acts and the conduct of the defendant Thornton on August 7, 1951, as disclosed by the evidence, bear directly upon his intent relative to the acts

and the conduct which he is charged to have committed on August 6, 1951; but even if the evidence relating to the acts and the conduct of the defendant Thornton on August 7, 1951, should not have been admitted by the circuit court, its action in permitting the introduction of such evidence does not justify reversal of the judgment of the circuit court in this proceeding. It should be remembered that this proceeding was tried by the court in lieu of a jury; and the rule is well established in this jurisdiction that in the trial of a case by a court without a jury it will be presumed that the court rejected and refused to consider any incompetent testimony that may have been admitted during the trial. *Rohrbaugh* v. *Rohrbaugh,* 136 W. Va. 708, 68 S. E. 2d 361; *Risher* v. *Wheeling Roofing and Cornice Company,* 57 W. Va. 149, 49 S. E. 1016; *First National Bank of Parkersburg* v. *Prager and Son,* 50 W. Va. 660, 41 S. E. 363; *Bailey* v. *Calfee,* 49 W. Va. 630, 39 S. E. 642. "In a case tried by a court in lieu of a jury, it is not error in the court to hear illegal testimony, the court being fully competent to discard such evidence." Point 2, Syllabus, *Wells-Stone Mercantile Company* v. *Truax,* 44 W. Va. 531, 29 S. E. 1006. *Farley* v. *Farley,* 136 W. Va. 598, 68 S. E. 2d 353; *State for Use of Crumbacker* v. *Seabright,* 15 W. Va. 590; *Nutter* v. *Sydenstricker,* 11 W. Va. 535. "When a case is tried by a court in lieu of a jury, it is not an error, for which the appellate court will reverse, to hear illegal testimony, if there be enough legal testimony to justify the judgment." Point 1, Syllabus, *Abrahams* v. *Swann,* 18 W. Va. 274. *Rohrbaugh* v. *Rohrbaugh,* 136 W. Va. 708, 68 S. E. 2d 361; *State* v. *Thacker Coal and Coke Company,* 49 W. Va. 140, 38 S. E. 539; *State* v. *Denoon,* 34 W. Va. 139, 11 S. E. 1003; *Nutter* v. *Sydenstricker,* 11 W. Va. 535.

If the evidence of the acts and the conduct of the defendant Thornton on August 7, 1951, admitted by the circuit court, had not been admitted, or if all the evidence of that character should be excluded and totally disregarded, the evidence which relates to the acts and the conduct of the defendant Thornton on August 6, 1951, as charged against him in the petition and the rule, clearly

supports and completely justifies the judgment of guilt rendered by the circuit court. See *Maxwell* v. *Ford,* 103 W. Va. 124, 136 S. E. 777; *First National Bank of Parkersburg* v. *Prager and Son,* 50 W. Va. 660, 41 S. E. 363; *State* v. *Denoon,* 34 W. Va. 139, 11 S. E. 1003; *Nutter* v. *Sydenstricker,* 11 W. Va. 535. The majority opinion expressly recognizes the rule that when a case is tried by a court in lieu of a jury the admission of illegal and improper evidence will not constitute reversible error and cites *Farley* v. *Farley,* 136 W. Va. 598, 68 S. E. 2d 353, as authority for that principle. In view of the evidence bearing upon the acts and the conduct of the defendant Thornton on August 6 and 7, 1951, the statement in the majority opinion that the rule can not be applied in this proceeding ignores the rule and a situation to which it is clearly applicable and, in my judgment, is wholly unwarranted. If the rule does not apply in this proceeding it should not apply in any case which is tried by a court instead of a jury.

The evidence of the acts and the conduct of the defendant Thornton on August 7, 1951, being clearly admissible, was properly considered by the circuit court for the purpose of determining the intent and the motive entertained by him while engaged on August 6, 1951, in the conduct charged against him; and though the circuit court found the defendant Thornton guilty because of the acts committed by him on both days, the finding as to his acts on August 7, 1951, does not vitiate or invalidate the judgment of his guilt or justify its reversal, if the judgment is based upon evidence which establishes beyond all reasonable doubt that the acts and the conduct of the defendant Thornton on August 6, 1951, constituted willful and deliberate violation of the injunction.

That the defendant Thornton, by his acts and conduct on August 6, 1951, wholly independently of his acts and conduct on August 7, 1951, willfully, intentionally, and deliberately violated the injunction is fully established by competent evidence beyond all reasonable doubt and even beyond any semblance of doubt. In the face of overwhelming proof of the guilt of the defendant Thornton the hold-

ing of the majority that such evidence is not sufficient to establish his guilt not only absolves a manifestly guilty defendant of the just punishment which, by his flagrantly contemptuous and illegal acts and conduct, he justly deserves, but also nullifies and renders unenforceable a solemn and valid order of a court of justice which merely forbade and enjoined the commission of acts of violence, which, in any civilized community, are recognized and dealt with as unlawful and criminal in character. The injunction was not issued to settle any labor dispute but to prevent unlawful acts of violence. Under the evidence the defendant Thornton is as guilty of the acts charged against him as any defendant could possibly be and to say that the evidence does not sufficiently prove his guilt is to ignore and disregard facts which are fully established by clear and convincing proof.

It is not disputed, and the defendant Thornton admits, that he was continuously at or near the garage in Charleston from approximately 6:00 a. m. until 10:00 a. m. on August 6, 1951, and that a large group of men, many of whom were under his authority and subject to his direction and control, were also present at or near that place during that period of time. It is also proved, and the defendant Thornton by his testimony admits, that he was personally served with a copy of the injunction about 9:00 o'clock that morning while he was present in the group near the garage. There is also evidence that after he was served with a copy of the injunction, he looked at it, folded it, put it in his pocket, and then laughed and joked with members of the group. It is also clear beyond question that many of the men, who were members of the union of which he was president, armed with rubber hose, pick handles, wooden clubs, claw hammers, tire tools, shovels, bottles, stones, brickbats, and other articles, while he was continuously and personally present with them, committed numerous overt acts, such as throwing hard biscuits, apples, tomatoes and stones, at the employees and the property of the petitioner, obstructing the movement of one of its trucks, attempting to overturn another

of its trucks, and attacking its operator. These acts, as expressed in the majority opinion, "would constitute violations of the injunction decree"; and it is unreasonable to assume or conclude that the defendant Thornton did not see or observe the acts of violence which occurred within the range of his vision, and which were committed by men who were subject to his authority as the president of the union to which he and they belonged.

That the defendant Thornton could have dispersed or restrained the group of men subject to his authority, at any time, had he so desired, is clearly established by the evidence of several witnesses and by his own admission that he kept them in check temporarily at Grapevine Hollow near the right of way where the employees of the petitioner desired to work on August 6, 1951, after he and they had followed them from the garage to that place and where he held a short conference with two or three employees of the petitioner in the group of men who wished to work and during which he threatened them with violence to them and their men unless they abandoned their work. Following this conversation, and because of the presence of the defendant Thornton and the men under his leadership and their threats and acts of violence if the employees of the petitioner engaged in work, those employees were prevented from performing their work and they returned to Charleston.

Except the dubious testimony of the defendant Thornton, and some of his associates, that he was present at both places on August 6, 1951, for the purpose of preventing his men from violating the injunction and that he endeavored to deter them from violating it, which testimony is conclusively refuted by the acts and the conduct of the defendant Thornton himself and the men subject to his authority, the evidence shows beyond question that, instead of attempting to control the conduct of his men, which he could have done quickly and effectively, he actually and openly acquiesced in, permitted and encouraged the acts of violence and the unlawful conduct perpetrated in his presence by persons under his authority,

leadership and control. There is no substantial or convincing proof in this record which indicates that the defendant Thornton, during his continued presence at or near the garage from approximately 6:00 a. m. until 10:00 a. m. and afterwards at Grapevine Hollow on August 6, 1951, made the slightest effort to control or to check the activities of the men under his leadership and subject to his authority as the president of their union or to order or even to persuade them to disperse or to cease their unlawful acts in violation of the injunction, except during a short interval at Grapevine Hollow when they readily and promptly observed his request that they refrain from threats and acts of violence while he conferred with some of the employees of the petitioner. On the contrary several witnesses testified that after he was served with a copy of the injunction, and while he continued to remain with the group, he did nothing whatsoever to disperse or check the activities of his men. It is manifest that a mere command or gesture, either at the garage or at Grapevine Hollow, would have prevented most or all of the acts of the men subject to his authority in violation of the injunction on August 6 and 7, 1951; and his failure to give any such command shows his approval of their conduct and clearly establishes his guilt. The arrogant, contemptuous, willful, and deliberate conduct of the defendant Thornton in permitting and in not forbidding his men, in his presence, to utter threats, to commit overt acts of violence, and to threaten employees of the petitioner with violence at the garage and at Grapevine Hollow on August 6, 1951, established beyond any reasonable doubt by competent evidence, constituted a persistent violation of the injunction by him and fully justifies and sustains the judgment of guilt rendered by the circuit court.

This Court has consistently held with respect to the verdict of a jury in a criminal case, based on conflicting evidence, that "In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the accused beyond

a reasonable doubt, though the evidence adduced by the accused is in conflict therewith. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done." Point 1, Syllabus, *State* v. *Bowles,* 117 W. Va. 217, 185 S. E. 205. See also *State* v. *Lewis,* 133 W. Va. 584, 57 S. E. 2d 513; *State* v. *Reppert,* 132 W. Va. 675, 52 S. E. 2d 820; *State* v. *Hacker,* 130 W. Va. 91, 42 S. E. 2d 559. The decisions of this Court also uniformly hold that the findings of fact of a trial chancellor, based on conflicting evidence, will not be disturbed on appeal, unless they are clearly wrong or against the preponderance of the evidence. *McCausland* v. *Jarrell,* 136 W. Va. 569, 68 S. E. 2d 729; *Holt Motors* v. *Casto,* 136 W. Va. 284, 67 S. E. 2d 432; *Adams* v. *Ferrell,* 135 W. Va. 463, 63 S. E. 2d 840; *Ghiz* v. *Savas,* 134 W. Va. 550, 60 S. E. 2d 290; *Carpenter* v. *Ohio River Sand and Gravel Corporation,* 134 W. Va. 587, 60 S. E. 2d 212; *Bennett* v. *Neff,* 130 W. Va. 121, 42 S. E. 2d 793; *Sutton* v. *Sutton,* 128 W. Va. 290, 36 S. E. 2d 608; *Taylor* v. *Taylor,* 128 W. Va. 198, 36 S. E. 2d 601; *Hardin* v. *Collins,* 125 W. Va. 81, 23 S. E. 2d 916; *Shipper* v. *Downey,* 119, W. Va. 591, 197 S. E. 355; *Spradling* v. *Spradling,* 118 W. Va. 308, 190 S. E. 537; *Tynes* v. *Shore,* 117 W. Va. 355, 185 S. E. 845; *Kincaid* v. *Evans,* 106 W. Va. 605, 146 S. E. 620; *Ramsey* v. *England,* 85 W. Va. 101, 101 S. E. 73. Though the cases last cited are proceedings in equity where the degree of proof is less strict than that required in criminal cases, the rule recognized by those decisions applies to the weight to be given to the findings of fact by the court in the trial of a civil or criminal proceeding by a judge in lieu of a jury. A judgment of a trial court upon submission of all matters of law and fact is entitled to the same weight as a verdict of a jury, *Board of Education of Hancock County* v. *Hartford Fire Insurance Company,* 124 W. Va. 163, 19 S. E. 2d 448; *Hoster-Columbus Associated Breweries Company* v. *Stag Hotel Corporation,* 111 Va. 223, 68 S. E. 50; *Gray* v. *Rumrill,* 101 Va. 507, 44 S. E. 697; and such judgment will not be reversed unless it is

plainly erroneous. *Rohrbaugh* v. *Rohrbaugh*, 136 W. Va. 708, 68 S. E. 2d 361; *State* v. *Thacker Coal and Coke Company*, 49 W. Va. 140, 38 S. E. 539; *Abrahams* v. *Swann*, 18 W. Va. 274.

As already pointed out the finding of guilt by the circuit court, which should be given the same weight as a verdict of a jury, is amply established beyond all reasonable doubt by competent evidence and the judgment of that court based upon such finding and supported by such evidence should not be reversed by this Court.

If, under the clear and convincing evidence of guilt disclosed by this record, the defendant Thornton can not be convicted of contempt for his willful and deliberate violation of the injunction, it is difficult to understand how any person, who observes, without objection or protest, acts of violence forbidden by a valid decree of a court of justice and committed in his presence by other persons subject to his authority and control, can ever be convicted and punished, or how obedience to such decree can be effectively enforced in any case, or even how the power and the dignity of a court of justice can be maintained and preserved. Contempt of court should not be lightly regarded. It is a serious offense. It strikes at the power, the dignity and the authority of the court and is subversive of good government. "The contemnor disregards the command of organized society proceeding through its court, relying for justification upon his own judgment although in violation of the established forms of law. When the courts cease to function in full force and vigor, society will revert to its primitive order." *State ex rel. Continental Coal Company* v. *Bittner*, 102 W. Va. 677, 136 S. E. 202, 49 A. L. R. 968. Incredible as it may seem, the decision of the majority has indeed sanctioned and made effective the boastful and brazen remark of the defendant Thornton that the injunction meant nothing to him.

The defendant Thornton was fairly tried and justly convicted and, as no prejudicial error appears in the case, I would affirm the judgment of the circuit court.